CHURCH et al. v. CITIZENS' ST. R. CO. et al.

(Circuit Court, D. Indiana. February 13, 1897.)

No. 9,373.

1. CORPORATIONS—ILLEGAL STOCK—SUIT TO CANCEL—EQUITY JURISDICTION.
   Where one has made a single purchase of a number of shares of the stock of a corporation, and afterwards discovers that a part of the stock of such corporation has been illegally issued, but cannot identify any particular shares of the stock purchased by him with the illegal issue, equity has no power to aid him in electing to cancel a proportional part of his stock, or to decree that any part of his stock is valid and the remainder invalid.

2. SAME—MULTIFARIOUS BILL.
   A bill by a stockholder of a corporation which seeks, on his own behalf, to cancel a part of the stock held by him as invalid and to relieve him of the burdens of ownership thereof, and, on behalf of all the stockholders, to set aside transactions by which the property of the corporation has been diverted and misapplied, is multifarious.

3. SAME—BONA FIDE PURCHASE OF STOCK—EQUITIES.
   Shares of stock in a corporation are not negotiable securities governed by the law merchant, and one who purchases such shares for value, in good faith, acquires thereby no rights or equities in respect to the stock which did not belong to his transferror or assignor.

4. SAME—SUIT BY STOCKHOLDER IN BEHALF OF CORPORATION.
   Under the ninety-fourth equity rule, it is not a sufficient excuse for the failure of a stockholder, suing to enforce rights of the corporation, to attempt to obtain remedial action by the corporation, that five of the seven directors who participated in the fraudulent transactions sought to be set aside are still members of the directory.

Lew Wallace, Jr., Hawkins & Smith, F. B. Burke, and Baker & Daniels, for complainants.

Miller, Winter & Elam, for defendants.

BAKER, District Judge (orally). I am as well prepared to make a ruling upon the demurrer at this time as I should be if I held it longer for the purpose of deliberation and examination of authorities. The court has invited the fullest discussion of all the questions that appear to be raised by the demurrer to the bill,

more for the purpose of seeing whether or not there was any ground upon which equitable relief might be afforded than because the court entertained serious doubt as to the decision that must eventually be made. The bill is one which sets out facts and transactions that appeal very strongly to the conscience of a court of equity, and one which, if any substantial basis could be found for it in the principles of equity jurisprudence, would incline the court to support the bill without very much regard to technical questions that might arise. This is a suit brought by the plaintiffs, citizens of the state of New York, against the defendant the Citizens' Street-Railroad Company, and other individual defendants, who are citizens of the state of Indiana. The plaintiffs allege that they are the owners of 200 shares of stock out of 50,000 shares issued by the corporation; that in the year 1895 they purchased these 200 shares of stock, in good faith, for the purpose of an investment, in the open market, at the price of 45½ cents on the face value of the stock. They allege that, shortly before the filing of their bill, —perhaps a month,—they discovered that, something over two years before the purchase of their stock, McKee and Verner, who had purchased for $2,250,000 the entire stock of the railroad company, consisting of 15,000 shares of stock, had conceived the idea of issuing 35,000 additional shares of stock, and of placing an incumbrance of $4,000,000 upon the railroad property, and that the purpose of such increased stock, and of the execution of such proposed mortgage, was to enable McKee and Verner by gift to obtain possession of the entire additional issue of stock, and to have enough of the issue of bonds or of their proceeds to reimburse them in full for the original purchase price that they had paid in acquiring the original stock that was outstanding at the time of their purchase, and which gave them the entire ownership of the corporation and its assets. It is alleged that, in furtherance and for the purpose of consummating this alleged fraudulent scheme and combination, McKee and Verner transferred a single share to each of certain other persons, who are named, in order to qualify them to act as directors; that these parties, including McKee and Verner, were elected as directors, and that McKee and Verner and those parties who had received by gift a single share of stock constituted the board of directors and the entire membership of stockholders of the corporation, and that they all, as stockholders and directors, with a knowledge of the fraudulent purposes on the part of McKee and Verner, and acting in concert with them as a board of directors and as stockholders, voted to increase the stock by the sum of 35,000 shares, and to issue a mortgage upon the property of the corporation to the amount of $4,000,000. It is further alleged that this fraudulent combination and scheme was fully consummated by these stockholders and directors, and that McKee and Verner were given, without any consideration whatever, the 35,000 shares of stock, and that they received out of the bonds that were issued the $2,250,000 that they had paid for the property, and it is charged that they have received, over and above that, a large sum of money out of the proceeds of the bonds and stock.

It is further charged in the bill that it was one of the purposes of this fraudulent combination and conspiracy that the stock should be gambled with, and, by artifices known to those who deal upon stock boards, that an artificial value, in excess of any real value that the stock possessed, should be apparently imparted to it, with a view of unloading on the general public. It is alleged that this fraudulent purpose and scheme was successfully consummated. Now, the plaintiffs allege they discovered, after purchasing their stock, something like a year, the existence of this conspiracy and the results that had been accomplished; and they allege that before this fraudulent scheme had been entered upon, this property was a valuable property, worth far more than the amount of the bonded indebtedness resting upon it, so that its stock was a valuable property; that the corporation has been rendered insolvent; and that the entire property of the corporation, if the corporation were wound up and its assets converted, would be insolvent, and would lack a million or more of dollars of paying out the mortgage indebtedness, leaving the stock absolutely valueless. This suit is brought by the plaintiffs, as shareholders in the corporation, suing, as they allege, for themselves and for and on behalf of all other stockholders in like case who are willing to come in and make themselves parties to the litigation and contribute to the expenses of the suit.

The first question that is raised by the averments of the plaintiffs' bill is the question whether the plaintiffs have any standing in a court of equity on the theory on which they have grounded their cause of action. The plaintiffs allege that having learned that the stock which they purchased in the open market was tainted with fraud, and that the whole number of shares of stock that they had bought was indistinguishable, so that they were unable to ascertain what shares of stock originated in the fraudulent conspiracy which they charge, and what shares of stock represent a portion of the original and valid capital stock of the company, they come into court and elect to repudiate, and ask the court to cancel, an aliquot part of their 200 shares of stock, in the proportion that 15,000 shares of stock, the original valid shares, bear to the 35,000 shares which they charge were brought forth as the result of this fraudulent conspiracy. They ask the court to aid them in making an election by virtue of which they shall be relieved from the burdens that they assume may be cast upon them if they retain the 140 shares of stock which they claim are tainted with fraud; and that the court shall adjudge that they are entitled to do that, and at the same time to retain 60 shares of stock which they ask the court to adjudge are valid and binding and unaffected by the fraud complained of. The question arising, then, is this: Can a party who makes a single purchase of stock, as a single act of contract, repudiate, either with or without the assistance of the court, so much of the single and indivisible contract as may be burdensome to him, and involve him in liability to suits and damages by reason of his retention of it, and at the same time retain the other portion of the stock which he alleges

in his bill it would be beneficial for him to retain? After the best reflection that I can give to the subject, it seems to me impossible that the law will afford any such relief. The purchase was an entirety. The contract was an entirety, and it is elementary that the court is possessed of no power to make a new contract between parties entirely distinct and different from the contract that they have entered into. And it is further familiar law that, where a party has been led into a contract by a fraud that has been practiced upon him, he is required, with reasonable promptness, to make his election, either to repudiate the fraudulent contract in toto, or else to retain the property that he has received as the result of the contract which he has been induced to enter into, and to sue at law for the purpose of recovering the damages that he has sustained by reason of the fraud that has been practiced upon him. A purchaser who has been induced to enter into a contract by fraud cannot repudiate the contract in part and affirm it in part. If he elects to take the benefit, he must also bear the burden. So that on this question it seems to me that there is no possibility of the plaintiffs recovering on the theory that stands at the very front of their bill.

A further objection is made to the bill, that it is multifarious. Multifariousness consists in stating against the same party two or more independent causes of action in the same bill, or it may consist in stating one or more causes of action against a portion of the defendants and another cause of action against another portion of the defendants. Here, in so far as the plaintiffs seek to be relieved of the fraudulent stock that they purchased, and to have it canceled, and to have the valid portion of it adjudged to be valid, and they adjudged to be stockholders and entitled to the rights of stockholders in the corporation in respect of that, it constitutes a cause of action which belongs alone to the plaintiffs. It is a cause of action which does not present a right of action in favor of the corporation or in favor of any other stockholder. It is a right of action that inures exclusively to the benefit of the plaintiffs, and in which no other stockholder in the corporation is directly or legally concerned. The portions of the bill in which the plaintiffs as stockholders seek to redress the wrongs that have been suffered by the corporation by reason of the wrongful diversion of 35,000 shares of stock, and by reason of the wrongful gift of $2,250.000 or more of the proceeds of the bonds to McKee and Verner, constitute a cause of action that concerns the entire body of stockholders as cestuis que trustent, who are entitled, after the payment of debts, to have that fund distributed among them. The primary right to enforce any cause of action that exists for such wrongs is in the corporation, and a stockholder cannot intermeddle by bringing a suit to recover such assets until he has shown that it is impracticable that the just rights of the stockholders can be preserved through corporate action. The two causes of action, then, that are set out in this bill of complaint, are distinct and independent; one being a cause of action that belongs individually and exclusively to the plaintiffs, and the other a cause

78 F.—34

of action belonging primarily to the corporation, and in which the plaintiffs have no interest except an equitable right as cestuis que trustent in common with the owners of the other 49,800 shares of stock. It would seem on the statement of the proposition to be manifest that it would be incongruous, and not in harmony with the practice of a court of chancery, in a single bill to prosecute causes of action so diverse in their character. In my judgment these two causes of action are so entirely independent,—one a cause of action belonging primarily to the plaintiffs, and the .other a cause of action belonging primarily to the corporation, which if sued for by a stockholder inures solely to the corporation,—they are so diverse in character, that it needs no argument to show that the bill cannot be maintained.

It is further objected that the plaintiffs in this case, having become purchasers of the stock, although they were good-faith purchasers of it, took it and hold it by no better or different title than the transferror of it to them. It is clear that the shares of stock in a corporation are not governed by the law merchant, nor are they governed by the statute of this state touching bills of exchange and notes made payable in a bank in this state. Securities of that character, in the interest of commerce and commercial dealings, are placed upon such a footing that if they reach the hands of an innocent purchaser for value, before maturity, the holder acquires them by a new and indefeasible title, which enables him to collect the contents of such bills or promissory notes without regard to the defenses, legal or equitable, existing between the original parties to them. But stocks are mere choses in action, governed by the principles of the common law, and by the common law such choses in action are no better or higher evidence of title or right in the hands of an assignee than they were in the hands of the assignor. That is the general rule,—a rule that, in my judgment, is applicable to this case,—and, without a reference to the adjudications that have been read to the court, the court would have reached the same conclusion by the application of the general principles of law with which the members of the bar as well as the court are familiar. So that in this case I see no principle of the law that would authorize the plaintiffs to maintain the present bill on the ground that the stock that they had purchased, by the transfer or assignment of it, had acquired some new rights or equities that the stock did not possess in the hands of the transferror or assignor. And this view seems to be supported by the authorities that have been read, which are in harmony with the understanding that the court has of the principles involved in this sort of contracts.

It is not necessary that the court should express any opinion with reference to the proper scope and effect of the ninety-fourth rule in equity. The rule seems to be so plain and explicit that no commentary upon it would make more apparent the meaning than that which is obvious from the mere reading of it.

There is no averment in the bill or in the affidavit that any effort was made to procure remedial action from the board of directors

of the company before suit was brought, and this failure is attempted to be excused by the allegation that five of the seven directors who participated in the original fraudulent combination and conspiracy are still members of the directory, and it is therefore urged that it must be apparent to the court that an application to them to undo the wrong that they have inflicted on the corporation would be unavailing. Applying the general principles of equity jurisprudence, and following the current of authority in the state courts on the subject, the court would be clearly of opinion that that would be a sufficient excuse. But the language of the rule in question, and the interpretation that has been given by the court which promulgated the rule, make it obvious that it was the purpose to introduce a more stringent rule in the national courts than the rule which is applied on the same subject in the state courts, and that such an excuse as is offered here does not satisfy the rule. It appears from the rule, further, that if formal application had been made to the board of directors, and efforts to induce the board to undertake corporate action had been made and refused, such refusal is not of itself sufficient to authorize the institution of a suit by a stockholder against the corporation for the purpose of recovering a corporate asset. It is still required that an effort should be made to induce action by the body of the corporation,—by the stockholders,—and that, if action cannot be obtained either from the board of directors or from the body of the stockholders, the bill shall show the character and extent of the efforts, and shall particularly show the reasons why the party who brings his suit failed to obtain remedial action within the body of the corporation. The bill fails to show proper action in these particulars; and it fails to show that complainants owned the stock at or before the commission of the fraudulent acts of which they complain, or that they have since acquired the stock by operation of law, as required by the rule. There are some other features of the bill that would justify comment, if enough had not already been said to dispose of the demurrer which has been filed.

There only remains one further inquiry, and that is whether or not the demurrer should be sustained and the bill dismissed without prejudice, or whether leave should be granted to amend the bill.

Mr. Wallace: If your honor please, we do not care to have leave to amend.

The Court: It seems to the court to be apparent, from the observations already made, that it would be impossible for the plaintiffs to amend their bill so as to obviate the objections that have been pointed out to it.

In finally disposing of the case, the court desires to say that it is always a matter of regret to the court, where grave charges of misconduct are imputed to defendants, that the case should be disposed of by a ruling on demurrer, instead of being disposed of after a full investigation and inquiry into the real truth of the grave charges that are made. The order of the court is that the demurrer be sustained, and that the bill be dismissed, but without prejudice, at the costs of the complainants.