PHOEBE A. HEARST and JAMES B. HAGGIN,
Appellants, v. THE PUTNAM MINING COM-
PANY, a Corporation, THE QUINCY MINING
COMPANY, a Corporation, WILLIAM M. FER-
RY, HENRIETTA McLAUGHLIN, as Adminis-
tratrix of the Estate of D. C. McLAUGHLIN, De-
ceased, W. W. ARMSTRONG, JAMES T. CLAS-
BY, JAMES FARRELL, W. V. RICE, DAVID
D. ERWIN, HENRY NEWELL, DAVID KEITH
and WALTER SCOTT, Respondents.

### No. 1543. (77 Pac. 753.)

1. **Corporations: Disposition of Property.**

A corporation has the same dominion over its property, with the
same right of disposition, as a private person.[1]

2. **Same: Fraudulent Conveyance: Action: Rights of
Stockholders.**

Where a corporation has exercised the right of disposition of its
property, stockholders thereof cannot in their own right
maintain a suit to cancel the conveyance on the ground of
fraud giving rise to a trust in their favor, *ex maleficio* or
otherwise; the act complained of having been fully consum-
mated, and the title of the property having passed to third
persons.

3. **Same: Judgment: Res Judicata.**

Where a suit to cancel the conveyance of the property of a
corporation on the ground of fraud was instituted by stock-
holders suing in the right of the corporation, a judgment
therein, rendered by a court of competent jurisdiction, that
there was no fraud, is conclusive on other stockholders in
a subsequent suit for the same purpose, based on the same
facts.

---

[1] Weyeth H. & M. Co. v. James-Spencer-Bateman Co., 15 Utah
110, 47 Pac. 604.

(Decided July 28, 1904.)

Appeal from the Third District Court, Salt Lake
County.—*Hon. C. W. Morse,* Judge.

Action in equity to have certain mining transact-
ions declared null and void. From a judgment in favor
of the defendants, the plaintiffs appealed.

AFFIRMED.

. *Messrs. Marshall & Royle* and *C. C. Dey, Esq.,* for
appellants.

*Messrs. Pierce, Critchlow & Barrette* for respond-
ents; *Arthur Brown, Esq., H. P. Henderson, Esq., An-
drew Howat, Esq.,* and *Ogden Hiles, Esq.,* of counsel.

STATEMENT OF FACTS.

This is an action in equity resulting from certain
mining transactions, whereby the plaintiffs claim they
were defrauded..

From the pleadings and the record, it appears, in
substance, that the defendant Putnam Mining Company
was a corporation organized under the laws of Utah,
with a capital stock of 100,000 shares, of the par value
of $10 each. When the transactions, of which com--
plaint is made, occurred, each of the plaintiffs was the
owner of 3,293 shares of that stock. The company
owned twelve mining claims, with all their "appurten-
ances, buildings, tunnels, shafts, tools thereon and
therein," situate in Summit county, Utah. The defend-
ant William M. Ferry was the vice president and a
director of the company, and on about October 16, 1895,
the company gave him a lease and bond on said mining
property, whereby it was, in substance, agreed that
Ferry should, at his own expense, operate and develop

the premises for a period of two years from the date of the lease, and should yield and pay to the lessor 20 per cent in value of all pay ores which he would mine and extract under the lease; that the lessee should have the disposal of certain "treasury stock" of the company, to aid him in defraying the expense of developing the mine under his lease; that he should have an option, at any time before the expiration of the lease, to purchase the said premises and property for the sum of $300,000, the money to be paid to the lessor; and that the lessee would not assign the lease, or any interest therein, without the consent of the lessor. Thereafter the lease and bond were extended to October 16, 1898, and on May 20, 1898, they were extended to October 16, 1900.

On August 15, 1899, the lessee, having then become financially unable to proceed with the work of developing the property, assigned an undivided two-thirds interest in his lease and bond to Francis Smith and David C. McLaughlin, both of them since deceased, on condition that the Putnam Company would consent to such assignment. The assignees, by the assignment, agreed to prosecute the development work on the property, agreeably to the lease, at their own expense, upon the condition that the assignor would procure a reduction, in the purchase price of the property under the option, from $300,000 to $50,000. On September 18, 1899, the regular annual meeting of the stockholders of the Putnam Company was held for the election of officers, and such other business pertaining to the business and property of the company as might properly come before it. At that meeting the stockholders present, representing 66,411 shares of the 99,360 shares of the capital stock then issued and outstanding, did, by unanimous vote, adopt and pass a resolution authorizing and instructing the board of directors of the company, by its president and secretary, to execute and deliver to Ferry an instrument in writing changing and modifying the lease and bond in the particulars following:

(1)  Extending the time of said lease and bond or option to purchase from October 16, 1900, to October 16, 1903.

(2)  Reducing the amount to be paid for said property, under said option to purchase, from $300,000 to $50,000.

(3)  Permitting Ferry to make such disposition of the lease and bond, by subletting or otherwise, as, in his discretion, he might deem to be for the best advantage in developing the mining claims.

And thereafter the president and secretary of the Putnam Company executed and delivered to Ferry, under the seal of the corporation, the instrument thus required by the resolution, modifying the lease and bond in the particulars mentioned. The assignees then proceeded, under the lease and bond, to prosecute the work of mining and developing the claims. They sunk a shaft to the depth of 400 feet, and did other mining work at a cost to them of over $33,000; and afterwards the lessees, and others associated with them, organized, under the laws of Utah, the defendant Quincy Mining Company, with a capital of $75,000, and Ferry and his associates assigned the lease and bond to the latter company for shares of its capital stock. On December 6, 1901, the Quincy Company elected to exercise the option, under the lease and bond, to purchase the mining claims and property for $50,000, and thereupon paid that sum to the Putnam Company, and received from it a deed to the property, as provided in the lease and bond and the modifications thereof. A part of the sum thus paid to the Putnam Mining Company was used by that company to pay its debts, and out of the entire residue a dividend of forty-eight and one-half cents per share was declared on its capital stock, which was paid to its stockholders; and the plaintiffs received and accepted the dividends on their shares of stock, the same as did the other stockholders of the company.

The plaintiffs allege in their complaint that all these various transactions by which the property of the

Putnam Company was leased, and afterwards sold to the Quincy Company, were fraudulent; that Ferry, being the vice president and a director of the company, was seeking his own profit and advantage, to the disadvantage of the corporation, and to the sequestration and dissipation of its property; that the board of directors were in collusion with him and under his control; that the majority of the stockholders were in collusion with him to defraud the minority; that there was no necessity for leasing the property in order to develop it; that it could have been prospected and developed better by the corporation itself; that Ferry had special knowledge of the richness of the ore bodies which were beneath the surface of the claims; that he and his associates, and those in collusion with him, knew of the great value of the property; that the transactions were had and done with the intent to get for themselves property of the Putnam Mining Company which was worth millions of dollars for the grossly inadequate sum of $50,000, to the injury of the Putnam Mining Company, and in fraud of the minority stockholders; that plaintiffs did not know of the fraud which had been committed till after it had been done, and until after they had accepted the said dividend out of the $50,000 purchase-money; that, the directors of the Putnam Mining Company being in collusion with Ferry and his associates and with the Quincy Mining Company, to ask them to proceed to have these fraudulent things undone would be to ask a vain thing; that, since the sale by the Putnam Company to the Quincy Company of the property in question, the latter company has sold and conveyed it to the Daly-West Mining Company for 30,000 shares of its capital stock; that before the sale to the Daly-West Company the Quincy Company distributed to its stockholders $1,200,000 in dividends derived from working said mining claims; that the Quincy Company has on hand in its treasury about $200,000 derived in the same way; that the plaintiffs are entitled to and should receive .06586 of all of such

money and stocks, as their share of the proceeds which resulted from these alleged fraudulent transactions.

The demands of the plaintiffs are that the lease and bond, and the several instruments of conveyance resulting from the lease and bond, be declared null and void; that an account be taken of all the money and stocks received by the Quincy Mining Company, or due to it, to ascertain the just proportion which should be paid by the defendants to plaintiffs; and that, upon such accounting, judgment be entered in favor of the plaintiffs for the amount due them.

The answer denies the material allegations of the complaint; pleads affirmative matter showing the nature of the transactions of which the plaintiffs complain; and, as a separate affirmative defense, and as a bar to this action, it is averred that heretofore Margaretta V. Rogers, one of the shareholders of the Putnam Mining Company, prosecuted, in the right and for the benefit of the corporation, a suit, in the district court for Summit county, to set aside and annul the said sale and transfer of the same property of the Putnam Company, for the same alleged grounds and the identical dealings and transactions which are alleged and set forth in the complaint herein; that in said action the Putnam Mining Company and the Quincy Mining Company were made parties defendant with Ferry, and as such appeared in that action; that, upon trial thereof in the district court, it was adjudged that neither Mrs. Rogers nor the Putnam Mining Company was entitled to an accounting, nor to any relief on account of the alleged dealings, because the same were in all respects fair and just; that findings and judgment were entered accordingly; and that the same is now a valid and subsisting judgment.

To this special and separate defense the plaintiffs demurred upon the ground that it did not state facts sufficient to constitute a defense, and also moved to strike out certain portions of the answer. On October 5, 1903, the demurrer was overruled, the motion to

strike out denied, and the further hearing continued to October 10, 1903, on which date, as appears from the findings of fact, this "cause came on regularly for trial" before the court sitting without a jury, and that the "plaintiffs declined to offer any testimony whatever in support of their complaint in this cause," but stated in open court that they would stand upon their complaint, and their exceptions to the rulings of the court, as to their demurrer and motion, and thereupon rested. The defendants then, "to sustain the issues on their part," introduced in evidence the judgment roll in the case of Rogers v. Ferry et al., above referred to as pleaded in the answer, and also the deposition of William M. Ferry, and rested. The plaintiffs introduced no evidence in rebuttal, and thereupon, after submission of the cause for decision, the court found the issues in favor of the defendants upon the merits, and rendered judgment of dismissal of the complaint and for costs. The plaintiffs appeal.

BARTCH, J. (after stating the facts).—The decisive question presented in this case is whether the court erred in overruling the demurrer to the special and separate defense set up in the answer, and in denying the motion to strike out that portion of the answer.

The appellants contend that the judgment in the case of Rogers v. Ferry et al., wherein the Putnam Mining Company was made a defendant, constitutes no bar to this suit, and that their demurrer should have been sustained and their motion granted.

The respondents insist that not only this action is barred by the judgment in the Rogers Case, but also that these plaintiffs must fail because they have brought and are attempting to maintain this suit in their own right, and not in the right of the Putnam Mining Company, although they claim only as stockholders of the corporation. The position of the respondents seems to be sound. And first as to the suit having been brought

for the benefit of the plaintiffs, in their own right, and not that of the Putnam Mining Company: In their complaint the plaintiffs allege the corporate existence of the Putnam Mining Company; that they are stockholders of the corporation; that the corporation owned and operated certain mining property; that, through certain fraudulent dealings and transactions, the directors and agents of the company conveyed all its property to Ferry and his associates; and that, although the property has since been very productive, and has paid large sums in dividends, no accounting has been made to the plaintiffs, nor to the Putnam Mining Company. They then demand that the alleged fraudulent dealings and transactions be set aside. and the instruments of conveyance decreed null and void; that an accounting be had of all moneys and stocks received by or due the vendee; that the just proportion to be paid the plaintiffs be ascertained; and that judgment be entered in their favor for the amount found due them. They then ask "for such further or all other relief as plaintiffs may be entitled to in equity and good conscience." They thus sue in their own right and for their own benefit only, notwithstanding the general allegation that the suit is also for the benefit of others who are in like situation, and who may appear as parties. They appear to proceed upon the theory that, because of the alleged fraudulent transactions, they are *cestuis que trustent* of a constructive trust, or a trust created in their favor, *ex maleficio,* by wrongful acts of the defendants, in dealing with the property and assets of the Putnam Mining Company. Under the facts disclosed by this complaint, no suit can be maintained upon such a theory. As has been seen, the allegations of the complaint clearly show that all the property in controversy was owned by and belonged to the corporation, and not to the plaintiffs, and it is not disputed that the corporation could own and hold its corporate property in absolute right, same as an individual. Nor can it be, for a corporation is a distinct entity, an artificial person,

created by law, and, as such, in this State, is capable of
suing and being sued, of acquiring, owning, and dis-
posing of property, within the objects of its creation,
the same as a natural person; and one may deal with
it, respecting its property, the same as with an individ-
ual owner, and without any greater danger of being
held to have received property into his possession bur-
dened with a direct trust or lien. Being a creature of
statute, and having conferred upon it its individuality
by law, which has endowed it with a legal existence,
independent of any or all of its stockholders, the cor-
poration has the same dominion over its corporate
property, with the same right of disposition, as a pri-
vate person has over his.

In Weyeth H. & M. Co. v. James-Spencer-Bateman
Co., 15 Utah 110, 121, 122, 47 Pac. 604, it was said: "The
natural person has such powers and rights as are con-
ferred upon him by nature, except as restricted by hu-
man laws for the good of society. The artificial person
or corporation has such powers and rights as are con-
ferred upon it by the law of its creation, and such as
are incidental and necessary to its corporate existence.
Both the natural and artificial personages act in an in-
dividual capacity. Among the most important attri-
butes of a natural person are his absolute dominion over
his property and his right of disposition, and the same
may be said of a corporation aggregate as to its corpor-
ate property. It has the right to contract and be con-
tracted with, to sue and be sued, to implead and be im-
pleaded, the same as a natural person; and it has the
right to do all other acts in regard to its property that
a natural person may do in regard to his."

Since, then, the corporation was capable of own-
ing, and in fact did own, the property in controversy,
absolutely, as a distinct entity, how could that property
be held to be property in trust for the benefit of per-
sons who are admittedly not the owners thereof,
and who have, at most, but an interest in the fund
created by the operation or disposition of the prop-

erty? The very fact that the plaintiffs were not the owners of the property in dispute precludes the idea of a trust having arisen in their favor, *ex maleficio* or otherwise, for in the existence of every trust there are three essential elements, the absence of any one of which is fatal to the trust. These are a trustee, a beneficiary or *cestui que trust,* and property belonging to the *cestui que trust.* Here the property proposed to be impressed with a trust does not belong to the plaintiffs, and, as to them, is not in trust, they having but an indirect interest therein; and neither the plaintiffs nor any other stockholders have any interest or estate in the property, legal or equitable, which they can enforce in their own right and for their own special benefit. Nor is there any trust relation which enables a stockholder to sue in such a case. "The relation of trustee and *cestui que trust,* or of debtor and creditor, or of partnership, does not exist between the stockholders of an incorporated company and the corporation itself. But the corporation and the individual shareholder may deal with each other at arm's length, the same as two strangers may, and a shareholder may contract with his corporation, and sue and be sued on his contracts." 1 Thomp. Corp. section 1076.

If a right of action exists, because of the alleged fraudulent acts and dealings in relation to the property in controversy, it exists in favor of the corporation, and of necessity the action must be brought in the right of the corporation, and for its benefit. If the defendants must account to any one for the property in litigation, the accounting must be to the corporation, and not to the plaintiffs or any other stockholders. The prayer of this complaint, in effect, asks the court to adjudge that the defendants have obtained for themselves, through fraudulent acts and dealings, the property of the corporation, and, instead of asking that the property so obtained, or its proceeds, be returned to the rightful owner, demands that the plaintiffs, for their own bene-

fit, be decreed a portion of the fruits of the fraud. In other words, according to their prayer, they seek to obtain a portion of the property and assets of a third party, which they say was obtained from such third party by fraud. That a stockholder of a corporation cannot recover corporate property, fraudulently or otherwise disposed of by the officers or agents of the corporation, by suing in his own right and for his own benefit, is settled by the authorities. It is true, where the property or assets of a corporation have been sequestered and dissipated by fraud or otherwise, a stockholder may, if the board of directors will not act, and a suit clearly ought to be brought, sue in the right of the corporation to have its property restored to it, or to obtain for it such other relief as the circumstances may demand, but in no such case can he sue for himself in his own right. This right of a stockholder to sue, in cases of fraud, for the benefit of the corporation, when it will not sue, is an exception to the general rule "that actions to redress wrongs done to a corporation must be brought by the corporation itself, and that such actions cannot be brought by its stockholders." 4 Thomp., Corp. section 4488.

In Gorham v. Gilson, 28 Cal. 479—a case much like the one at bar—where a mining company was induced by the fraudulent representations of a part of its stockholders to make a conveyance of its property, and the plaintiffs, stockholders, brought suit in their own right to have conveyed back to themselves such part of the property as was proportional to their stock, Mr. Chief Justice Sanderson, speaking for the court, and holding that the innocent stockholders could not maintain an action in equity to compel a conveyance to them of such portion of the corporate property, said: "This action proceeds upon the theory (and it could be maintained upon no other) that, in equity, the defendants, by reason of their fraudulent acts, have become the trustees of the plaintiffs to the extent of an undivided half interest in the property in question. But we think

it is clear that the facts set out in the complaint do not sustain that theory. Where, by fraud and deceit, a party is induced to do that which, but for the fraud and deceit, he would not have done, equity will interfere, and, so far as it can be done, restore him to his original rights. If the defrauding party has obtained by such means the title to property, equity will convert him into a trustee for the defrauded party, and will compel the execution of the trust by ordering the deed so obtained to be cancelled, or the property reconveyed, thus placing the property and the parties where they were originally; thus undoing what has been done, and putting the title where it was before, or, in other words, adjudging that the title remains unchanged and unaffected by the conveyance, because the same is, in equity, null and void, by reason of the fraud and deceit by which it was obtained. Such relief, however, the plaintiffs are not in a position to claim. They never had any title, legal or equitable, to the property in question. They have not only not conveyed anything to the defendants, but they had nothing to convey. The property belonged to the corporation, and not to them, and the corporation, and not they, conveyed it away under the fraudulent inducements in question. So far as any right to the form of relief sought in this action is concerned, the fraud was committed against the corporation, and not against them.''

So, in Abbott v. Merriam, 8 Cush. 588, Mr. Chief Justice Shaw, speaking of the rights of stockholders, said: "As stockholders, they have rights undoubtedly and interests in the affairs and management of the concerns of the corporation; but these are derivative and indirect, and are limited and regulated by law. They have no right by any direct suit, legal or equitable, to call the directors or other officers of the corporation to account for mismanagement. Nor, if all the stockholders were to unite in a suit in equity, could they have any better ground to recover. The directors and other officers and agents are amenable only to the corporation,

and to give every individual stockholder a right of action would lead to a multiplicity of suits.''

In Forbes v. Memphis, etc. R. R. Co., 2 Woods, 323, Fed. Cas. No. 4926, Bradley, Circuit Judge, said: ''A commercial or other business corporation is constituted for the specific purpose of suing and being sued, granting and receiving, buying and selling, and doing other business in a corporate name and capacity, totally distinct from that of any or all of its members, considered as individuals. They have only an indirect interest therein. . . . All remedies for injuries to the property must be prosecuted in the name of the company, and all demands against the company must be prosecuted against the company, by name, unless its officers or agents, by fraud and misrepresentation, have rendered themselves personally liable. A stockholder, in his character of stockholder, cannot sue, nor, unless specially made liable by the charter, can he be sued for any of the company's transactions.'' 4 Thomp. Corp., sections 4443, 4445; 1 Thomp. Corp., section 1071; Smith v. Hurd, 12 Metc. (Mass.) 371, 46 Am. Dec. 690; Smith v. Maine Boys Tunnel Co., 18 Cal. 112; Davenport v. Dows, 18 Wall. 626, 21 L. Ed. 938; Church v. Citizens' Street Ry. Co. (C. C.), 78 Fed. 526; Big Creek G. C. & I. Co. v. American L. & T. Co. (C. C. A.), 127 Fed. 625; Mickle v. Rochester Bank, 11 Paige 118, 42 Am. Dec. 103; Spurlock v. Missouri Pac. R. Co., 90 Mo. 200, 2 S. W. 219; Verplanck v. Mercantile Ins. Co., 1 Edw. Ch. (N. Y.) 84; Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827.

There are instances, however, where a stockholder may apply to a court of equity for a preventive remedy by injunction to restrain those who are administering the affairs of the corporation from doing acts which are *ultra vires,* or to prevent a misapplication of the corporate funds which might result injuriously to the stockholders, where the acts intended to be performed would amount to a breach of trust. In such and like cases a preventive remedy may be applied at the instance of a

stockholder, but such cases are wholly different from those like the one at bar.

Mr. Thompson, in his Commentaries on the Law of Corporations, vol. 4, section 4491, states the distinction thus: "Where an action is brought by one or more stockholders to enjoin the performance of *ultra vires*, fraudulent, or oppressive acts on the part of the directors, the remedy is preventive; consisting of an injunction against the performance of such acts, to which may be superadded, in appropriate cases, other forms of equitable relief. Where, on the other hand, the action is brought to undo frauds and breaches of trust already committed, and to restore to the corporation assets thereby wasted, the action does not, as in the former case, proceed in right of the stockholder, but it proceeds in the right of the corporation, and consequently whatever is restored accrues to the corporation."

Where, then, as in this case, the acts complained of have been fully consummated, and the title to the property has passed into the hands of third parties, a stockholder has no remedy to recover, in his own right, any specific or proportionate part of the property for his own benefit. And where the corporate property of such a corporation, in whole or in part, has been sold or disposed of in good faith, under the powers of its charter, and not as a result of fraudulent purposes, the minority stockholder has no cause for complaint, for, as we have seen, a corporation of this character may, in the absence of restraint by the law of its creation, lease, sell, or dispose of any or all of its property, the same as an individual may do respecting his property. This may be done by a majority of the members. The principle that the majority must rule in the management of the affairs of a corporation "is rigidly upheld in equity, in the absence of fraud, oppression, and *ultra vires* acts." 4 Thomp., Corp., sec. 4533; 2 Kent, Com., 280-282; Weyeth H. & M. Co. v. James-Spencer-Bateman Co., 15 Utah 110, 47 Pac. 604; Ardesco Oil Co. v. N. A. Min. & Oil Co., 66 Pa. 375; Treadwell v. Salisbury Mfg. Co.,

7 Gray 393, 66 Am. Dec. 490; Central Transp. Co. v. Pullman's Car Co., 139 U. S. 24, 50, 11 Sup. Ct. 478, 35 L. Ed. 55; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328.

But suppose this suit were regarded and treated as brought, not in the right of the plaintiffs nor for their own benefit, but in right of all the stockholders, and hence for the corporation, and for its benefit; then could the plaintiffs recover? We think not, because, viewing this suit in that light, they are met at the very threshold with the judgment in the case of Rogers v. Ferry et al., where the Putnam Mining Company was a defendant, and which forms the special plea in the answer herein. The plaintiffs, by their demurrer to that plea, have admitted, for the purposes of this case, all the averments properly pleaded therein to be true. Among such averments, it appears that that suit was brought and tried in a district court of this State— a court of competent jurisdiction; that the plaintiffs therein sued in right of the corporation, the Putnam Mining Company; that the Putnam Mining Company and the Quincy Mining Company were there, same as here, parties defendant; that the identical cause of action and the identical matters which are herein charged as fraudulent were therein pleaded and tried; that the court adjudged and determined that all the transactions and dealings complained of were lawful and made in good faith, and were without any fraud done or intended; and that neither the Putnam Mining Company, nor the plaintiff therein, was entitled to any accounting in respect of the matters charged in that complaint; and that such judgment is of record, and is still in full force and effect. Thus it clearly appears that the Rogers suit was brought and intended for the purpose of undoing the very transactions complained of in this action as being a fraud on the Putnam Mining Company and its stockholders, and the judgment was that neither the plaintiff nor the corporation was entitled to an accounting. As that suit was brought in the

right of the corporation, that judgment is binding upon the corporation, and, by the rule of representation, all the stockholders are equally bound by it. It follows that, since the transactions and dealings complained of in that suit are exactly the same transactions and dealings complained of in this action, that judgment, being in full force and effect, is conclusive against the right of the plaintiffs to recover herein; they being stockholders in the corporation. The court having decided that there was no fraud in the transactions in controversy, and that the corporation has no right of recovery, no stockholder can make the same transactions the basis for complaint.

In Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184, where the plaintiff in error, who was a stockholder, claimed that a certain order or decree which was binding upon the corporation was void, as against him, because he was not a party to the suit in which the order was made, the Supreme Court of the United States held that, "in the absence of fraud, stockholders are bound by a decree against the corporation in respect to corporate matters, and such a decree is not open to collateral attack." Mr. Chief Justice Fuller, delivering the opinion of the court said: "Sued after such an order of court, the defendant does not deny the existence of any one of the facts upon which the order was made, but contends that there has been no call, as to him, because he was not a party to the cause between creditor and corporation. We understand the rule to be otherwise, and that the stockholder is bound by a decree of a court of equity against the corporation in enforcement of a corporate duty, although not a party as an individual, but only through representation by the company. A stockholder is so far an integral part of the corporation that, in the view of the law, he is privy to the proceedings touching the body of which he is a member." Freeman on Judgments, sections 176, 178; Glenn v. Williams, 60 Md. 93; Kessler v. Ensley Co. (C. C.), 123 Fed. 546.

The fact that this suit was brought by different parties plaintiff is immaterial, since these plaintiffs, as stockholders, were privy to the proceedings in the former suit, and since both suits were identical as to cause of action, subject-matter, purpose, and object, quality of persons for or against whom claim is made, and as to the thing adjudged. These legal identities existing, and the same questions involved herein having been judicially settled and determined in the Rogers suit, the judgment in that case is an effectual bar to this action. Freeman on Judgments, sections 252, 253, et seq.; New Orleans v. Citizens' Bank, 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 681; Lyon v. Perin & Goff Manufacturing Co., 125 U. S. 698, 8 Sup. Ct. 1024, 31 L. Ed. 839.

From the foregoing considerations, and from the authorities, the conclusion is inevitable that the court did not err in overruling the demurrer or denying the motion directed at the special plea, nor in rendering judgment in favor of the defendants on the merits.

We find no reversible error in the record. The judgment is affirmed, with costs.

BASKIN, C. J., and McCARTY, J., concur.