SPRING v. WEBB et al.

(District Court, D. Vermont. March 12, 1915.)

1. ABATEMENT AND REVIVAL ☞74—DISMISSAL FOR FAILURE TO REVIVE.

Under equity rule 45 (198 Fed. xxx, 115 C. C. A. xxx), providing that, in the event of the death of either party, the court may, in a proper case, upon motion, order the suit to be revived by the substitution of the proper parties, and that, if the successors or representatives of the party fail to make such application within a reasonable time, any other party may, on motion, apply for such relief, and the court, upon any such motion, may make the necessary orders for notice to the parties to be substituted, and for the filing of such pleadings or amendments as may be necessary, where, after the death of the plaintiff in a stockholder's suit, no motion to revive or continue the suit was made within a reasonable time, defendants properly moved to dismiss the bill, as the words "as may be necessary," in that rule, do not merely modify the words "pleadings or

amendments," but refer to everything that the court may do upon motion made.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 429–431, 433–440, 442–444; Dec. Dig. ☞74.]

2. ABATEMENT AND REVIVAL ☞74—SUITS IN EQUITY.

An "abatement" in equity is not necessarily a destruction of the suit, like an abatement at law, but is merely an interruption of the suit, suspending its progress until new parties are brought before the court, and if this is not done at the proper time the court will dismiss the suit.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 429–431, 433–440, 442–444; Dec. Dig. ☞74.

For other definitions, see Words and Phrases, First and Second Series, Abatement.]

3. ACTION ☞1, 16—NATURE OF "ACTION"—"CAUSE OF ACTION"—RIGHT TO BRING SUIT."

An "action" is merely the form in which a cause of action is presented, while the term "cause of action" is synonymous with "right to bring suit," and that right is based upon the ground or grounds on which an action may be maintained.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 1–7, 85–93, 262; Dec. Dig. ☞1, 16.]

For other definitions, see Words and Phrases, First and Second Series, Action; Cause of Action.]

4. ABATEMENT AND REVIVAL ☞52—ACTIONS WHICH MAY BE REVIVED—STOCK-HOLDERS' SUITS.

A stockholder's suit, in which the bill charges the failure or refusal of the corporation to bring actions for torts against the defendants, is capable of revivor, after the death of the original plaintiff, in the name of any other shareholder similarly situated, or in the name of the deceased plaintiff's executors, if his shares of stock have descended to them, even conceding that actions of tort fail with the death of the plaintiff under the state law, and that the United States courts obey, in respect of abatement and revival, the laws of the state in which they sit, since the cause of action put forward in a stockholder's suit is derivative, and the stockholder's primary right is the right of the corporation, which does not fail with the stockholder's death.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 248–254; Dec. Dig. ☞52.]

In Equity. Suit by Andrew C. Spring, a stockholder of the Rutland Railroad Company, against William Seward Webb and others. On motion to dismiss the bill. Motion denied conditionally.

The action was brought by a shareholder of the Rutland Railroad Company, on behalf of himself and all others similarly situated, etc., and is of the kind referred to in equity rule 27 (198 Fed. xxv, 115 C. C. A. xxv). Spring was the sole plaintiff, and he died on December 14, 1914. At an earlier stage of the case opportunity had been offered to other persons to come into the action and become coplaintiffs, but upon terms which have never been complied with, wherefore by the death of Spring the position of plaintiff herein was left vacant. The defendants therefore now represent that, no motion having been made to revive or continue the suit by plaintiff's solicitors, and the cause of action not being one that does survive, an order should be entered dismissing the suit. The formal motion is for such dismissal, or for such other relief as to the court shall seem meet.

Louis Marshall, of New York City, for plaintiff.

Frederick H. Button, of New York City (John W. Weed, of New York City, of counsel), for defendants.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HOUGH, District Judge. Considering the number of stockholders' suits brought in this country, it is singular that so little authority is to be found on the question here presented. The industry of able counsel has not relieved the court of seeking what appear to be first principles.

[1] It is, I think, plain that this motion is properly brought, both in substance and as to time, under equity rule 45 (198 Fed. xxx, 115 C. C. A. xxx). The applicable words of that rule are:

"In the event of the death of either party the court may * * * upon motion order the suit to be revived by the substitution of the proper parties. If the successors or representatives of the deceased party fail to make such application within a reasonable time, then any other party may *on motion apply for such relief * * * as may be necessary.*"[1]

Prior to the passage of this rule the opinion was widely entertained that there was no method of reviving an equity suit, except by bill of revivor. Dillard v. Central Virginia Iron Co. (C. C.) 125 Fed. 157. Yet the practice was firmly established of permitting a defendant to move to dismiss, if such bill of revivor was not filed within a reasonable time after the decease of a plaintiff. Brown v. Fletcher (C. C.) 140 Fed. 639.

Bills of revivor are cumbrous survivals of antiquity, and in my judgment rule 45 was intended to regulate and make identical the method of revival and the method of penalizing a failure to revive; i. e., to make simple motions applicable to both contingencies.

Having regard to the past history of this case and the length of time that has elapsed since Spring's death, there has been a failure to move with reasonable speed on the part of the plaintiff. The appropriate action in such a condition of affairs would be to fix a period within, and lay down terms upon, which substituted parties might come in. But before getting this far it is necessary to consider defendants' proposition that the cause of action set forth in the bill does not survive, wherefore any formal revival or continuance of this action is futile.

[2] It seems to me to clear the atmosphere to recall the distinction between abatement of suit in equity and abatement of action at law. As was said by Story, J., in Hoxie v. Carr, 1 Summ. 73, Fed. Cas. No. 6,802, an abatement in equity—

"is not necessarily a destruction of the suit, like an abatement at law, where a judgment quod cassetur, is entered. It is merely an interruption to the suit, suspending its progress until the new parties are brought before the court; and if this is not done at a proper time, the court will dismiss the suit."[2]

---

[1] NOTE.—It will probably be said that the above arrangement of words gives to the adverbial phrase "as may be necessary" a larger scope than is proper. It will be urged that grammatically it modifies or explains the immediately preceding words "pleadings or amendments," and does not modify or explain anything else. This point is not susceptible of argument; one must take it or leave it at a glance. In my opinion the phrase "as may be necessary" applies to everything that the court may do upon motion made.

[2] NOTE.—Justice Story here relies upon certain English authorities, to which may be added those enumerated in 1 Corp. Jur. 159, note 82, d. These citations show satisfactorily that rule 45 is a reversion to the ancient and simple English practice.

In a personal action at common law a suit abated utterly and forever, because the plaintiff's death abated the writ, and it is only by virtue of statutes, however ancient that this result has been prevented. No such rule ever obtained in equity, as Story, J., set forth with considerable elaboration in Clarke v. Mathewson, 12 Pet. 171, 9 L. Ed. 1041.

The orthodox view of the history of equity (as put by Blackstone) is that the jurisdiction of the Chancellor arose to correct "that wherein the common law by reason of its universality was deficient." This resounding phrase means, among other things, that what equity originally took cognizance of law could not. Therefore, as long as the questions cognizable in the two jurisdictions were radically different in kind, no conflict was possible on the question of abatement and revivor. But for generations bills in equity have been filed to enforce legal rights, and it is obviously true that, if the death of a party terminated the legal right sought to be enforced, equity would follow the law, and the equitable action become after death incapable of continuance.

This is the proposition at the basis of this motion, viz., that this bill in equity is brought to enforce certain rights, legal in their nature, capable of enforcement at law by the Rutland Railroad, and only cognizable in equity because the power of chancery is necessary to enforce (in favor of the shareholders of the Rutland) rights which the corporation itself failed and refused to urge.

To put the matter in another way, it has always been possible to revive an action in equity; "action" meaning merely the machinery by which rights are to be enforced. It was not originally possible in any way to review and continue a personal action at law abated by death; but by reason of statutes, some of them centuries old, it has long been possible so to do.

[3] It is, however, idle to continue or revive any action, either at law or in equity, if the cause of action dies with the party. There is an obvious distinction between action and cause of action. Action is merely the form in which the cause of action is presented, while of the latter phrase it has been said that:

"In its simplest analysis the term 'cause of action' is synonymous with 'the right to bring a suit,' and that right is based upon the ground or grounds on which an action may be maintained." Payne v. New York, etc., R. R. Co., 201 N. Y. at page 440, 95 N. E. at page 21.

[4] Therefore the ultimate inquiry as to the death or survival of what in common parlance is called a suit or action is to ascertain the true nature of the cause of action presented in the suit. It has not been found easy to define the nature of the cause of action put forward in what is now commonly known as a "stockholder's action."

It is undoubtedly derivative in its nature; that is, the stockholder can advance nothing that the corporation could not urge. It is essential to his success to prove that he is doing no more than the corporation itself ought to have done, and the fruits of his victory must flow, not to him, but to the corporation, whose negligence, oversight, or wrongdoing is the excuse for his presence as a plaintiff. Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815; Dickerman v. Northern

Trust Co., 176 U. S. 188, 20 Sup. Ct. 311, 44 L. Ed. 423; De Neufville v. New York & Northern Ry. Co., 81 Fed. 10, 26 C. C. A. 306; Willoughby v. Chicago, etc., Rys. Co., 50 N. J. Eq. 656, 25 Atl. 277; Hearst v. Putnam Mining Co., 28 Utah, 184, 77 Pac. 753, 66 L. R. A. 784, 107 Am. St. Rep. 698. It seems, therefore, clear that a stockholder's primary right to sue is the right of the corporation, and that, unless the corporation's right fails with his death, the suit ought not to abate, whether it be brought in equity or at law, if in any jurisdiction such suit at law be permissible.

It is at this point that defendants' argument seems to me to fail. Let it be admitted that each one of the sins of omission charged in the bill consists in a failure or refusal on the part of the Rutland Company to bring an action of tort against the defendants. Let it also be admitted that such actions of tort fail with the death of the plaintiff under the statutes and decisions of Vermont, and that the courts of the United States obey in respect of abatement and revivor the rules of the state in which they sit. Martin's Administrator v. Baltimore & Ohio R. Co., 151 U. S. 673, 14 Sup. Ct. 533, 38 L. Ed. 311. Yet it still remains true that the Rutland Railroad has not died, and that the primary cause of action which Spring endeavored to assert herein is still in existence unabated.

This line of reasoning is not impugned by such cases as Witters v. Foster (C. C.) 26 Fed. 737; for that case goes upon the plain doctrine that the cause of action therein asserted died with the death of the complainant in the equity suit. An opposite result was reached, but the same principle illustrated, in Allen v. Luke (C. C.) 163 Fed. 1018; the difference apparently being that between the law of Massachusetts and the law of Vermont.

If search be made for cases of dying stockholders, neither court nor counsel has been able to discover more than Edwards v. Mercantile Trust Co. (C. C.) 121 Fed. 203, where the point was avoided by the intervention before the death of the original complainant of a second shareholder, who was permitted to carry on the suit. Nevertheless it seems to me that this position is only consistent with the argument hereinabove advanced; for, if the original complainant had presented a cause of action which depended upon any right of his own, the presence of an intervening complainant could not prevent the death of the first man's right with that man's decease. One or two or any number of complainants in a stockholder's action can do no more, whether acting jointly or singly, than to enforce the corporation's cause of action. So that the Edwards Case is only sustainable upon the theory that the cause of action survived; and if that cause of action did survive, then the suit or action in equity must be revivable in favor of any person or persons entitled to carry it on.

The question as to who may carry on the suit does not seem easy of answering. Any other shareholder similarly situated may come in, and so may the personal representatives of Spring, if the shares of stock which alone gave Spring the right to sue have descended to the executors of his will.

The analogy of a taxpayer's action is not without instructive interest, although in Gorden v. Strong, 158 N. Y. 407, 53 N. E. 33, the right to revive and continue such a suit is based upon the New York statute. Yet the inquiry there put is the logical one, viz.: What was the nature of the deceased complainant's cause of action? A very fair analogy under a comparatively ancient equitable head of jurisdiction is found in a creditor's suit, and in Austin v. Cochran, 3 Bland (Md.) 337, some consideration of this point may be read.

It results that in my opinion this action is capable of revivor; that the persons naturally to be looked to as substituted plaintiffs are the executors of Spring, both of whom are citizens and residents of Massachusetts, as was Spring himself.

It is stated in the affidavit of counsel for Spring that it is now sought to bring in certain other shareholders described as a "protective committee." This committee was given the opportunity of coming in by order filed November 13, 1914, provided that they complied with certain conditions.. This has not been done, and any application to let them in is new matter, and not before me on this motion.

But, whether other parties plaintiff may be hereafter admitted or not, they will come into a revived suit, and, considering the residence of Spring's executors, the condition of the record, and the time that has been permitted to elapse, it is just that the right to revive be made contingent upon security for costs.

It is therefore ordered: (1) That the motion to dismiss the bill be denied; (2) that an application to revive the action will be granted, if made within 30 days from the date of filing this opinion, and accompanied by security for taxable costs, fees, disbursements, and expenses herein, whether now accrued or hereafter to accrue, in the sum of $5,000, with security to be approved by this court; and (3) if such application for revivor, accompanied by such bond for costs, etc., be not made as to the motion, and filed as to the bond, within said 30 days, that then and in such case an order may be forthwith entered dismissing the bill, with costs to be taxed.