MARKS et al. v. MERRILL PAPER CO. et al.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1913.)

No. 1,899.

1. CORPORATIONS (§ 189*)—SALE OF PROPERTY—RIGHTS OF MINORITY STOCK-
HOLDERS—RESCISSION—DELAY.

Where minority stockholders delayed for nearly a year in instituting suit to set aside a sale of the corporation's assets to another company, and in the meantime rights of innocent bondholders and other creditors had intervened, such minority stockholders were barred by laches from having the transfer rescinded.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 706–722; Dec. Dig. § 189.*]

2. CORPORATIONS (§ 182*)—SALE OF ASSETS—MINORITY STOCKHOLDERS—FRAUD.

Where a corporation in desperate financial straits and without power of recuperation sold its property to another company without fraud as against the rights of the minority, the majority having volunteered to make provision for those who were financially unable to meet the requirements to enable them to participate in the transfer and consolidation, the transfer was not invalid as to the minority as inequitable and prejudicial to their property rights.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 686–690; Dec. Dig. § 182.*

Rights of minority stockholders as to management of corporate affairs, see note to Wheeler v. Abilene Nat. Bldg. Co., 89 C. C. A. 482.]

3. CORPORATIONS (§ 318*)—TRANSFER OF ASSETS—IDENTITY OF GOVERNING OF-
FICERS.

Where the officers of an insolvent corporation without power of recuperation, with the consent of the majority stockholders, transferred all its property to another corporation having the same governing officers, such identity of officers did not invalidate the transfer, provided it was made in good faith.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1363, 1364; Dec. Dig. § 318.*]

4. WITNESSES (§ 29*)—FEES—FEDERAL COURTS.

Where a witness from without the state voluntarily presented himself and testified without subpœna, he was only entitled to mileage to the extent of the running of the writ of subpœna, to wit, 100 miles.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 67–69; Dec. Dig. § 29.*]

Appeal from the District Court of the United States for the Western District of Wisconsin; Arthur L. Sanborn, Judge.

Bill in equity by Fred J. Marks and others against the Merrill Paper Company and others. From a decree (Marks v. Merrill Paper Mfg. Co., 188 Fed. 850) for defendants, plaintiffs appeal. Modified and affirmed.

Appellants, herein termed "complainants," minority stockholders in the Merrill Paper Manufacturing Company, herein termed the "Merrill Company," filed the present bill on December 6, 1907, against the two corporation defendants, the Merrill Company and the Grandfather Falls Company, and certain individual defendants, majority stockholders of the Merrill Company, and also stockholders of the Grandfather Falls Company, to have the transfer of the property of the Merrill Company to the Grandfather Falls

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Company of January 15, 1907, declared to be fraudulent and void and set aside, and that said Merrill Company be reinvested with title thereto, that an injunction restraining the Grandfather Falls Company from disposing of said property be granted, and that pending a hearing a receiver be appointed to conserve the property.

From the evidence it appears that the plant was operated by water power; that through some miscalculation this was found to be grossly inadequate (so much so that the plant could not produce a quarter of the pulp required); that it became necessary to purchase the greater part of the needed pulp; and that continued operation of the plant would incur heavy loss. At that time the court found that its investment amounted to $444,000. Complainants' counsel assert that there was not to exceed $293,000 invested. This seems to accord with the November, 1905, trial balance, from which, however, certain items were omitted. To provide adequate water power, the Merrill Company purchased the power site at Grandfather Falls for $62,500, and paid down $2,500 in February, 1906. Attempts were then made to raise means to pay the balance, which was drawing 6 per cent. interest. The stockholders were appealed to in vain, and this scheme was abandoned. Thereafter, certain of the largest stockholders of the Merrill Company organized the corporation defendant, the Grandfather Falls Company. This was on June 1, 1906, and its object, among others, was the developing of that water power. This company then proposed to the Merrill Company to buy its rights and interest in the Grandfather Falls site, and on June 14, 1906, this offer was accepted by the Merrill Company's stockholders on the following terms, viz., the payment of the $2,500 advanced and the assumption of the debts on said Grandfather Falls site. It was further agreed that the Merrill Company should have water power from said power site at $25 per horse power up to 2,000 or more horse power for three years, whenever the dam was completed,—which would require at least a year's time. In the meantime, the affairs of the Merrill Company were in a very critical condition. It owed $68,393 of pressing claims, and $33,000 of its bonds were past due. Other bonds aggregating, approximately, $50,000 were up as collateral to loans.

The court found the value of the Merrill Company's property to be $25,000 less than its indebtedness. Its credit was entirely exhausted. In this situation the Grandfather Falls Company made a proposition to purchase all of the Merrill Company's property for the amount of its indebtedness. The officers of both companies were the same, and all the stockholders of the Grandfather Company were stockholders in the Merrill Company. The proposition of the Grandfather Falls Company was accepted without opposition at a duly called meeting of the Merrill Company stockholders on December 15, 1906, at which 1,510 out of 2,000 shares of stock were represented. The deed was delivered January 15, 1907, for an expressed consideration of $186,000. The proposition of the stockholders of the Merrill Company with reference to said sale was set out in the following instrument, viz.:

"We, the undersigned, do each for himself, alone. separately and severally subscribe for and agree to purchase and pay for in cash, at par value, the number of shares of the capital stock of the Merrill Paper Manufacturing Company set opposite our respective names here following. On condition, however, that the owners of not less than 95 per cent. of the present outstanding capital stock of said company each in like manner subscribe for additional stock of said company equal in each instance to not less than 75 per cent. of his present holdings. And in case said condition shall not be complied with within 15 days, then we agree to incorporate and organize a corporation under the laws of Wisconsin, to be known as the Grandfather Falls Company, for the purpose of purchasing the lands and water power facilities at Grandfather Falls heretofore owned in common by Messrs. Anson. S. Heinemann, B. Heinemann, Harmon, O'Day and Daly Estate, and providing boomage facilities, improving navigation, developing water power thereon, and purchasing and holding the stock of the undersigned in Merrill Paper Manufacturing Company and other stock in manufacturing corpora-

tions likely to need or use said power, and for such other purposes as may be agreed upon. And upon such incorporation being effected this subscription shall as to each subscriber stand as a subscription and agreement to purchase at par value the same amounts, respectively, of the capital stock of said Grandfather Falls Company, and we each severally agree to pay our respective subscriptions on demand of the proper board of directors."

Later, the Grandfather Falls Company issued a stock dividend of 133⅓ per cent. of the holdings of its stockholders based upon the shares in the Merrill Company held by its company. This, the court held, was a matter of form, and not of substance, to enable the stockholders to make a better showing for loaning purposes and otherwise. Complainants did not participate in the foregoing enumerated proceedings, though advised that such propositions were to be acted on. After the suit had been instituted, and at the beginning of the taking of the evidence, defendants offered to let complainants and all minority stockholders in on the deal upon the same terms as those accorded to the majority, plus interest accruing since the time when the majority stockholders had paid in their money. In the meantime, the Grandfather Falls Company had issued and sold its bonds to persons having no knowledge of the complainants' demand. As above stated, this suit was not instituted until about a year after the Merrill Company had sold out.

The complainants attack the bona fides of the sale, charging that the method of doing business by the Merrill Company was not interrupted; that the sole purpose was to deprive the minority stockholders of their rights in case they declined to make further investments in the premises.

The court on the hearing found that the sale was fair, that no advantage was thereby gained by the majority stockholders over the minority stockholders, and that the bill was without equity. Thereupon the court dismissed the bill for want of equity at complainants' costs taxed at $386.35. Included in the items taxed as costs is the allowance of $176.10 in favor of the witness Brazeau, who was brought by defendants from Seattle, and who appeared without subpœna. The mileage was fixed at 5 cents per mile on 3,522 miles, covering the travel of coming and going. From which decree this appeal was prosecuted. For errors, complainants assign the following, viz.:

That the court erred in holding that the majority stockholders and officers of the Merrill Company, being also officers and stockholders of the Grandfather Falls Company, might lawfully transfer the property of the former company in the manner proposed to the latter, to the exclusion of the minority stockholders of the former, if done at a fair sale and without fraud, or undue advantage; that the court erred in holding that the sale in the present case was fair to complainants; and that there was error in the taxation of costs by the court. Further facts are set out in the opinion.

Almon W. Bulkley and C. E. More, both of Chicago, Ill., for appellants.

Edward M. Smart, of Milwaukee, Wis., and R. N. Van Doren, of Merrill, Wis. (B. R. Goggins, of Grand Rapids, Wis., of counsel), for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The findings of fact made by the trial judge are, in substance, supported by the evidence. The record conclusively establishes the fact that, at the date of the sale by the Merrill Company of its entire plant to the Grandfather Falls Company, the former was in desperate financial straits, without power of recuperation. Through what at this time seems to have been deplorable lack of foresight, its substance had been expended in securing a vast factory equipped with every facility for

doing business, except the means for putting it in motion. In so doing, and in its various attempts to remedy this fearful neglect, its ability to provide a remedy was, for all practical purposes, exhausted. Ordinarily, the promoters of such an undertaking, finding themselves hopelessly involved, would have abandoned the enterprise. From the record, it appears that among the stockholders were a number of men who were unwilling to carry the stigma of failure and were therefore disposed to make further sacrifice, and thereby supply the missing means of propulsion and other needed features. Strenuous effort was made to enlist the co-operation of all the Merrill Company's stockholders. The action taken was effected without any apparent opposition.

[1] Delay, such as is shown in the present action of complainants, instituted as it was about one year after the sale, and at a time when the success of the enterprise seemed likely, and when rights of innocent bondholders and other creditors had intervened, has been held to bar the minority stockholder from his remedy through rescission. Johnson v. Railway Co., 227 Mo. 423, 127 S. W. 63; City Bank v. Merchants' Bank, 105 S. W. (Tex. Civ. App.) 338; Thompson on Corporations (2d Ed.) §§ 4511, 4512; Mechem on Modern Law of Corporations, § 1582; McCann v. Welch, 106 Wis. 149, 81 N. W. 996; Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836; Sullivan v. Ry. Co., 94 U. S. 806, 811, 24 L. Ed. 324.

"Laches is not like limitations, but is a question of the inequity of permitting a claim to be enforced, and it depends on whether, under all the circumstances, the plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did." Venner v. Ry. Co., 236 Ill. 349, 86 N. E. 266; Townsend v. Vanderwerker, 160 U. S. 171, 16 Sup. Ct. 258, 40 L. Ed. 383.

[2] If, however, there was fraud in effecting the sale, or if the majority took such means for doing an inequity to the minority stockholders, and thereby gained an advantage over them, other remedies may be decreed. Leavenworth County v. R. I. & P. R. Co., 134 U. S. 688, 10 Sup. Ct. 708, 33 L. Ed. 1064; Jones v. Missouri Edison Electric Co., 144 Fed. 765, 75 C. C. A. 631 (the later case citing many other cases). Indeed, this rule is too well established to need citation of authority. But under the facts of this case no such condition existed. There was no property right of complainants to be destroyed, unless a pro rata interest in a deficit can be called such. It is of no consequence in such a case as was there presented that the plant had cost more than the actual indebtedness—if that were true. The bald proposition was that, with money and credit exhausted, there was no hope of saving it without the advance of further and very considerable funds. Had the minority stockholders joined in the plan to save the investment, there would have been no need of a sale. The majority volunteered to make provision for those who were financially unable to meet the requirements of the new scheme. It would have been unconscionable to compel the majority to advance funds for the benefit of the minority, who were able to pay their proportion and would not. The latter seem to have rested supinely upon what they conceived the

majority would have been compelled to do for them in order to protect their own interests. Their attitude was justified neither by the law nor good business sense. From all that appears, the price paid was fair. No other likely scheme was presented. It seemed to be literally that or nothing. Under the circumstances, we are of the opinion that no advantage was taken of complainants or of any other stockholder, or attempted. If that be so, it makes no difference that the sale was to another corporation, composed of practically the same directors and stockholders. The only question involved is that of fairness and good faith. The Wisconsin statute under which the Merrill Company was organized has been construed by the Wisconsin Court in Werle v. N. F. & S. Co., 125 Wis. 534, 104 N. W. 743, to place no other limitation on the power of a corporation to sell its property to pay its debts under like circumstances to those here presented. There, the sale was made to a stockholder, and the property was conveyed by him to another corporation organized by him and other stockholders for the purpose. The objecting stockholder raised the point that it was in effect a sale by stockholders to themselves. To this contention the court said:

"But, as indicated, it was in good faith and with the knowledge of all the stockholders, each of whom was at liberty to bid on the sale and become a purchaser if he saw fit to do so. The company could only sell to some one willing to purchase. * * * No creditor is here complaining, but only a stockholder who had the same right and opportunity to purchase as any other stockholder. The result of the transaction was to pay and satisfy all the debts of the corporation. It was in effect for the benefit of the creditors of the corporation."

In Leavenworth County v. Ry. Co., supra, the court says of a similar state of facts:

"Notwithstanding this commingling of officers, the corporations were distinct corporations. They had a right to make contracts with each other in their own corporate capacity, and they could sue and be sued by each other in regard to these contracts, and the question is not, could they do these things, but, have the relations of the parties, the trust relation, if indeed such exist, been abused to the injury of the Southwestern Company?"

[3] The authorities are numerous and controlling to the effect that the mere fact that the sale of property of one corporation to a new corporation, the majority of whose governing officers are the same, will not per se vitiate the sale. The question is always one of good faith and fairness, except in cases where public policy intervenes. The facts in the present case bring it within the language of the court in Harts v. Brown, 77 Ill. 226:

"The stockholders had been called together, and they were urged to make advances in proportion to the stock they severally held, and thus relieve the company and preserve its existence, but this they refused to do; and as it could not be preserved, and must come to an end by a sale under the power in the trust deed, no reason is perceived why appellants might not become the purchasers at the sale.

"They were under no moral or legal obligation to advance their own means, pay the debts, and preserve the property for the use of the other shareholders, who had declined to join in making pro rata advances to relieve it from debt. Appellants seem to have acted fairly, as they purchased at a sum sufficient to pay all the debts of the company. They chose to do so rather

than make an effort to obtain all of the property for the debts secured by the trust deed and the certificate of purchase. On the contrary, they gave many thousand dollars more, that honest creditors might be fairly paid, and the company wrong no one. This does not have the appearance of fraud. Appellants had faith that the enterprise could be carried out with success, and that they could thus save the means they had advanced; but appellees, by the course they adopted, manifested an entire want of confidence in its ultimate success. They were even offered the opportunity to come in, for a considerable period afterwards, and share in the new enterprise, by advancing a ratable portion of the means, but they all declined; but, when success was achieved, they then saw the advantages they had lost and then sought to set aside the sale and have the property restored to the old company, and thus reap the benefits arising from the enterprise and means advanced by others. To do so, they should show fraud or a want of power to make the sale or the purchase by appellants, neither of which has been done."

[4] So far, we find no error in the decree of the trial court. With reference, however, to the taxing of costs, we deem the rule laid down by Judge Jenkins in Eastman et al. v. Sherry (C. C.) 37 Fed. 844, to be the correct one. In that case the witness also presented himself without a subpœna. The court held he was in attendance "pursuant to law"; that he was entitled to mileage only to the extent of the running of the writ of subpœna, viz., 100 miles, and disallowed mileage for the distance traveled by the witness in attending in excess of 100 miles. So here, we are of the opinion that the amount of mileage taxed in excess of $10 was improperly taxed. We see no error in allowing witness fees to the two nominal defendants. They were compelled to attend by the command of the several subpœna, when their own interests did not make it necessary; and have the right to be indemnified to the extent of the regular witness fees. No error was assigned to the allowance of items for postage, telephoning, telegraphing, and express charges aggregating $8.65. We are unable to say on the record that the trial judge abused the discretion vested in him in such case. Further assignments of error to the taxing of costs, we do not deem well taken. The amount of mileage taxed and allowed to Brazeau in excess of 5 cents per mile for 100 miles and return, to wit, $166.10, may be deducted from the allowance of costs, on the authority of Pine River Logging Company v. U. S., 186 U. S. 279–297, 22 Sup. Ct. 920, 46 L. Ed. 1164.

Otherwise the decree of the trial court is affirmed.