BUCHLER v. BLACK et al.

(District Court, W. D. Washington, N. D.    May, 1914.)

No. 2112.

1. CORPORATIONS (§ 314*)—TRUSTEES—PURCHASE OF OUTSTANDING MORTGAGE.
    A trustee of a corporation to protect his own interests may purchase a majority of the outstanding stock of the corporation and a mortgage on its property, in his individual capacity, the corporation having no author-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ity to purchase the same for itself; such act not being inconsistent with the trustee's duty to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1393–1398, 1400; Dec. Dig. § 314.*]

2. CORPORATIONS (§ 314*)—RIGHTS OF STOCKHOLDERS—PRESERVATION OF PROPERTY.

Where a corporation was in financial difficulties, after having mortgaged its property, and a written notice was sent to all stockholders, including complainant, asking a pro rata advancement to preserve the company's property, but complainant personally declined to make any advances, and the stockholders did not respond, complainant could not complain that one of the corporation's trustees took an assignment of the mortgage and an option on the interest of a majority stockholder in order to protect his own interest.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1393–1398, 1400; Dec. Dig. § 314.*]

3. CORPORATIONS (§ 320*)—SALE OF PROPERTY—OBJECTIONS—LACHES.

Where complainant, a stockholder of a corporation, waited more than three years after confirmation of a foreclosure sale of its property to one of its trustees and another, before instituting suit in equity to set it aside, on the ground that the trustee should be declared to hold the property in trust for the corporation, complainant's right to such relief was barred by laches.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1426–1431, 1433–1439; Dec. Dig. § 320.*]

4. CORPORATIONS (§ 482*)—RECEIVERS—SALES—CONFIRMATION—RES JUDICATA.

Where, in receivership proceedings against a corporation pursuant to mortgage foreclosure, objections were filed by minority stockholders to the validity of defendant's claims against the corporation, but these objections were overruled and a sale of the corporation's property to defendants confirmed, such confirmation was res judicata as to the validity of the sale in a subsequent suit by a stockholder to set it aside for fraud.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1870, 1877–1888; Dec. Dig. § 482.*]

5. JUDGMENT (§ 443*)—VACATION—FRAUD.

A judgment cannot be set aside for fraud in obtaining it, but only for fraud which is extrinsic or collateral.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 785, 836, 838; Dec. Dig. § 443.*]

In Equity. Suit by G. J. Buchler against W. W. Black and others. On final hearing. Bill dismissed.

See, also, 205 Fed. 1000.

O. C. Moore, of Spokane, Wash., and George H. Walker, of Seattle, Wash., for complainant.

Robert McMurchie, J. A. Coleman, and Lloyd L. Black, all of Everett, Wash., for defendants.

NETERER, District Judge. The plaintiff is now, and during all times material to this action has been, a citizen of the state of Pennsylvania. Defendant Bell is and has been a citizen of Glen Falls, N. Y., and defendant Black a citizen of Everett, Wash. The Sunset Mining Company is a corporation organized under and by virtue of the laws of Washington, with its principal place of business at Everett. Defendant Black was judge of the superior court of Washington for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Snohomish county from January, 1905, to January, 1913. He was also one of the trustees of the defendant company from 1903, and during a portion of that time served as secretary of the defendant company and as its local general manager. The majority of the trustees of the defendant company, during the time material to this inquiry, lived at Glen Falls, N. Y., where the majority of the stock of the company was held. The company had an office at Glen Falls, and seems to have transacted its business from there, except the stockholders' meetings, which were held at Everett, Wash. W. H. Baldwin appears to have been the dominating influence by reason of his large stock holdings. Defendant Bell is a lawyer, and was the legal adviser of W. H. Baldwin and Ella Baldwin, his wife, and for a time was general attorney for the defendant corporation. He never acted as trustee for the defendant company except for one day in 1904. At this time it seems to have been necessary to enable the company to transact some business to fill a vacancy on the board, and he was elected and continued a trustee for one day. Defendant Black was not present at this meeting, and it does not appear that he knew anything about it. On August 3, 1904, the employment of Bell as attorney for the defendant company ended, although thereafter he attended to some legal matters for the company under special employment. The defendant company was capitalized for 1,000,000 shares at $1 per share, which was subsequently increased to 3,000,000 shares, and it acquired 36 mineral locations upon government land, and. was required, for the purpose of holding the claims, to do $3,600 worth of assessment or development work each year. The company had no funds except such as it obtained from selling what is termed in the evidence "treasury stock." This is stock contributed to a fund to be sold for the company's use. This stock was sold at from two cents per share upwards; and the proceeds were used for doing assessment work. Funds derived from this source were insufficient for the company's needs, and the Baldwins advanced and loaned to the defendant company, from time to time, $29,384.10, and on February 10, 1905, a mortgage was given by the defendant company to Ella Baldwin to secure the payment thereof. The defendant Black advanced to the company December 26, 1906, for the purpose of doing its assessment work, $1,500, and a mortgage to secure the repayment was thereafter made upon the company property to Black. On October 6, 1906, the defendant Black secured an option to purchase from Ella C. Baldwin 1,250,000 shares of the capital stock of the defendant company, and claims and mortgages held by her against said company, amounting to not less than $35,000, for the sum of $100,000 to be paid at stated times and upon default Black's interest to cease, the stock and evidence of indebtedness to be placed in bank in escrow; W. H. Baldwin having died in April, 1905, leaving Ella C. Baldwin, his widow, with no property except the Sunset property and her home. On November 5, 1906, Black sold his option to Soderberg for $130,000, and received $10,000. Soderberg assumed payments to be made to Mrs. Baldwin, and afterwards sold his contract to the Chelan Consolidated Copper Company. On February 13, 1907, Black in his individual capacity entered into a contract with the Chelan Consolidated Copper Company, in which the

Baldwin option and Soderberg sale and purchase by the Consolidated Copper Company was recited, with the further recitation that all parties desired to have the claims and properties of the Sunset Copper Company improved, and that the options did not contemplate the development of the mining claims beyond the ordinary prospective and development work, and that because of such fact the Chelan Consolidated Copper Company may enter upon the property "and develop * * * the same * * * and extract and ship * * * ores * * * in such manner as it may deem fit * * * but * * * in a miner-like manner, and all for the use and benefit of the Sunset Copper Company;" the Consolidated Copper Company to develop and pay the costs and expenses, and upon the sale of the ore to pay the cost of mining and shipping and pay the balance, if any, to the Sunset Copper Company. This company did no work under this contract, but paid to defendant Black the $20,000 due him. On March 27, 1907, the Consolidated Copper Company sold its option to Albers, and on April 2d following, Albers sold same to the Trout Creek Copper Company. This company expended, in developing the mining property, from $16,000 to $20,000. It sold approximately $8,000 worth of ore. The contract entered into by Black and the Chelan Consolidated Copper Company was ratified by the Sunset Copper Company as its act, and the board of trustees elected a general manager to look after the company's interest while this work was being done. The Sunset Copper Company afterward contended that it should receive the value of the ore shipped, which the Trout Creek Copper Company denied. A suit was commenced in New York to recover the $8,000 received for the ore. This suit was, on May 23, 1908, settled by the parties; all of the trustees of the Sunset Copper Company and the plaintiff in this case signing the agreement for such settlement. On December 9, 1908, defendant Bell, having succeeded to the Baldwin mortgage and stock, commenced, a foreclosure proceeding in the superior court of Snohomish county, and on the same day a receiver was appointed, and it was "ordered that said receiver cause all necessary assessment work to be done upon the aforesaid mining claims," and he was authorized to issue receiver's certificates for work done. Claims were filed with the receiver against the company by H. C. McNutt, $1,307.95; defendant Bell, a judgment obtained in New York for $12,767.57; H. W. Holmes, $1,488; W. W. Black, $10,923.21, a part of which was for the mortgage given; Bartlett, $12.80; and the Bell mortgage, on which suit was commenced, $37,501.71. On March 18, 1907, Rudibeck, a stockholder, filed an affidavit on behalf of himself and other stockholders, and attacked the indebtedness and charged fraud and collusion. The claims were approved by the court and ordered paid, the property was sold, March 20th, to W. W. Black and F. N. Bell, and on March 29th Rudibeck filed protest and objection to the confirmation of the sale. On March 30th L. T. Reed, a stockholder, filed objection to the confirmation of sale. Objection to confirmation was based, in substance, on the same grounds upon which relief is sought in the complaint. On April 5, 1909, the objections to the confirmation of the sale came regularly on for hearing before the court. The objections

were overruled and sale confirmed, and conveyance by the receiver made to defendants Black and Bell.

There is no evidence before the court that there was any collusion between the defendants Black and Bell with relation to any of the conduct of the business of the defendant company, nor is there any evidence before the court to justify the conclusion that either the defendant Black or Bell had any influence over the board of trustees, or exercised any undue influence of any character in any of the proceedings referred to in the complaint. There is no evidence before the court that any information with relation to the conditions or status of the defendant company's property was at any time withheld from the plaintiff. By the evidence it is shown that the plaintiff was at all times advised of the financial condition and status of the defendant company, knew of every act and thing that was done by the board of trustees, and that he was advised, more than a year prior to the institution of the foreclosure action, that the company was without funds, and he was requested to contribute as a stockholder to the fund in connection with the other stockholders for the purpose of relieving the financial stress of the defendant company and doing the assessment work, and he declined to contribute anything, and stated that none of the stockholders would contribute. The plaintiff requested the defendant Bell to foreclose his mortgage more than a year prior to the time when foreclosure proceedings were instituted, and that he be given an option to sell the property. He also asked the defendant Black to use his influence with defendant Bell to secure a foreclosure. After the defendant Bell acquired the mortgage from Mrs. Baldwin, defendant Black made a trip to New York for the purpose of inducing the defendant Bell to withhold foreclosure proceedings, stating to defendant Bell that he believed money could be realized within a year to liquidate the indebtedness. Defendant Bell agreed to wait, and at the expiration of a year, no payments having been made, and it being necessary that the assessment work be done to protect the property, sent a circular letter to all of the stockholders, among whom was the plaintiff, and set forth the status and condition of the company, stating, in substance, that unless payment was made, foreclosure would ensue. None of the stockholders responded, except one small holder, and his check was returned when the other stockholders, including the plaintiff, declined to contribute. The assessment work for 1909 was not done, and the time in which it was required to be done expired January 1st next ensuing. This notice was dated November 16, 1908, and informed the stockholders of the indebtedness of the defendant company, and that the receivership was threatened, and his willingness to advance funds in proportion to the stock held by him for Mrs. Baldwin if the other stockholders would do likewise. Defendants Black and Bell since acquiring the property have expended in assessment work on the mining claims approximately $25,000. There is no direct evidence before the court as to the value of this property as mineral land.

The complainant seeks to have Black and Bell declared trustees of the property for the defendant company, and in the concluding paragraph of his reply brief says:

"The controlling factors in this case are the withholding by Black of $30,-000, and the manipulation by the defendants of the corporation's property. Upon these two points the final decision must rest. In comparison with these two points all else is incidental."

[1] I think counsel has overemphasized this statement and the relation of the defendants to each other and to the defendant company. The evidence shows that the defendant Bell knew nothing about the option to Black until after it was given. There is no testimony showing any collusion between Black and Bell in the carrying out of a common design. Bell did not approve the transaction, and was a stranger to its bearings and relations. As to the defendant Black, he could not have taken this option for the company of which he was trustee. The corporation could not traffic in its own stock. He did nothing as an individual that he could have done as a trustee. He did nothing detrimental to or jeopardized any interest of the defendant company. On the contrary he obtained for the defendant company by this act from $16,000 to $20,000 worth of work without expense, and this work was utilized by the defendant company as a basis for its assessment work for the year 1907. This work was done with the consent of the defendant company, and the concluding relations between the defendant company and the Trout Creek Company which did the work was adjusted amicably after the commencement of a suit, and with the plaintiff's written consent. There is no evidence presented which would justify any court in finding that there was any manipulation of the defendant company's property by the defendants Black and Bell, which injuriously affected it. So far as the evidence disclosed there was no act of commission or omission on the part of either of said defendants which was intended to or did injuriously affect the defendant company. The securing of the option and selling by Black was a transaction between him and Baldwin, with which the defendant corporation had nothing to do, and was a transaction which the defendant corporation could not do. Black's act, therefore, was not inconsistent with any duty he owed as trustee to the corporation. Rem. & Bal. Code of Wash. § 3697; Tait v. Pigott, 32 Wash. 344, 73 Pac. 364; Barto v. Nix, 15 Wash. 568, 46 Pac. 1033; 10 Cyc. 577, 578; O'Neile v. Ternes, 32 Wash. 528, 73 Pac. 692. A trustee may buy property of the corporation when fairly done, and for the purpose of protecting his own interest, when he acts in his individual capacity.

In Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328, the defendant, a director of the complaining corporation, loaned the company $2,000 secured by a deed of trust. At a subsequent sale under this deed, the defendant purchased all of the property of the corporation. In an action brought four years later to have the defendant declared a trustee for complainant, on page 590, 91 U. S. (23 L. Ed. 328) the court said:

"If it be conceded that the contract by which the defendant became the creditor of the company was valid, we can see no principle on which the subsequent purchase under the deed of trust is not equally so. * * * Defendant was at liberty to bid, subject to those rules of fairness which we have already conceded to belong to his peculiar position; for, if he could not bid, he would have been deprived of the only means which his contract gave him of making his debt out of the security on which he had loaned his money."

In Cowell v. McMillin, 177 Fed. 25, 39, 100 C. C. A. 443, 457 (C. C. A., Ninth Circuit), in discussing a contract made by a director with the corporation, the court said:

"Thus the case is brought within the rule recognized by the Supreme Court of the United States, namely, that where the director has acted with that candor and fairness which equity imposes as the guide for dealing between him and the corporation, and the transaction is open and free from blame, the director is not forbidden from making a contract with the corporation, or from entering upon a transaction in which he is personally interested"— citing Twin-Lick Oil Co. v. Marbury, supra, and other authorities.

In Marks v. Merrill Paper Co., 203 Fed. 16, 20, 123 C. C. A. 380, 384, the court said:

"The authorities are numerous and controlling to the effect that the mere fact that the sale of property of one corporation to a new corporation, the majority of whose governing officers are the same, will not per se vitiate the sale. The question is always one of good faith and fairness, except in cases where public policy intervenes. The facts in the present case bring it within the language of the court in Harts v. Brown, 77 Ill. 226: 'The stockholders had been called together, and they were urged to make advances in proportion to the stock they severally held, and thus relieve the company and preserve its existence, but this they refused to do; and, as it could not be preserved, and must come to an end by a sale under the power in the trust deed, no reason is perceived why appellants might not become the purchasers at the sale. They were under no moral or legal obligation to advance their own means, pay the debts, and preserve the property for the use of the other shareholders, who had declined to join in making pro rata advances to relieve it from debt.'"

See, also, Janney v. Minnesota Ind. Expo., 79 Minn. 488, 82 N. W. 984, 50 L. R. A. 273; Saltmarsh v. Spaulding, 147 Mass. 224, 17 N. E. 316; Allen v. Gillette, 127 U. S. 589, 8 Sup. Ct. 1331, 32 L. Ed. 271.

[2] A written notice was sent to all the stockholders asking that pro rata advances be made for the purpose of preserving the property. The stockholders did not respond. The plaintiff personally declined to make any advance. The defendants Black and Bell cannot be "deprived of the only means which his contract gave him of making his debt out of the security on which he loaned his money."

[3] The plaintiff knew, long prior to bringing this action, of the option and subsequent sale, and knew that the contract by Black, permitting the Trout Creek Copper Company to do certain work on the property, was ratified by the defendant company. The plaintiff with the trustees of the defendant company entered into a written stipulation settling an issue arising out of said contract more than four years before the bringing of this action. The defendant company would not be permitted to raise an action on that account, and the plaintiff does not occupy a stronger position than would the defendant company. 10 Cyc. 963; 28 Am. & Eng. Encyc. Law, 970.

In Twin-Lick Oil Co. v. Marbury, supra, the Supreme Court of the United States, on page 591, 91 U. S. (23 L. Ed. 328), said:

"The doctrine is well settled that the option to avoid such a sale must be exercised within a reasonable time. This has never been held to be any determined number of days or years as applied to every case, like the statute of limitations, but must be decided in each case upon all the elements of it

which affect that question. These are generally the presence or absence of the parties at the place of the transaction, their knowledge or ignorance of the sale, and of the facts which render it voidable, the permanent or fluctuating character of the subject-matter of the transaction as affecting its value, and the actual rise or fall of the property in value during the period within which this option might have been exercised."

After stating that the plaintiff had taken no action for four years, while the defendant had been putting his skill, energy, and money in the enterprise to make his purchase profitable, the court concludes:

"We think, both on authority and principle—a principle necessary to protect those who invest their capital and their labor in enterprises useful but hazardous—that we should hold that plaintiff has delayed too long."

In Rothchild v. Memphis & C. R. Co., 113 Fed. 476, 51 C. C. A. 310, the minority stockholders did not bring an action until 17 months after the sale at which the majority stockholder bought the property, and the court held that the complainants were guilty of laches. The plaintiff waited more than three years after confirmation of sale before bringing this action.

The authorities cited by the plaintiff are merely to the effect that a court of equity is not governed by the statute of limitations, that a mere lapse of time will not impute laches, and that the court is not bound by hard and fast rules in the determination of what will constitute such laches as will bar a recovery. 19 Am. & Eng. Encyc. of Law, 162; 15 Am. & Eng. Encyc. of Law, 1206; Michoud v. Girod, 4 How. 504, 561, 11 L. Ed. 1076; Sullivan v. Portland, etc., R. Co., 94 U. S. 806, 24 L. Ed. 324; Stearns v. Page, 7 How. 819, 12 L. Ed. 928; Godden v. Kimmell, 99 U. S. 202, 25 L. Ed. 431; Payne v. Hook, 74 U. S. (7 Wall.) 430, 19 L. Ed. 260; Stevens v. Grand Central Mining Co., 133 Fed. 28, 67 C. C. A. 284; Burns v. Cooper, 140 Fed. 279, 72 C. C. A. 25; Davis v. Louisville Trust Co., 181 Fed. 22, 104 C. C. A. 24, 30 L. R. A. (N. S.) 1011; 16 Cyc. 152, and cases there cited; Street's Federal Equity Practice, Secs. 211, 212.

It is unnecessary to determine to what extent a court of equity, while not considering itself bound by a state statute of limitations, will rely upon such a statute for aid in determining a doubtful case, because I am convinced from the facts and circumstances here presented that the plaintiff has been guilty of such laches as should preclude his recovery by the operation of the rule as laid down in Twin-Lick Oil Co. v. Marbury, supra, without resort to the statute of limitations. While the court is not bound by hard and fast rules, yet no such case is here presented as would justify the court in disregarding the rules which have been laid down merely because it is recognized that a wide discretion is vested in the court which applies them.

[4] I am further of the opinion that the action of the state court in approving the claims of the defendants Black and Bell over the objections of the minority stockholders, and in confirming, the sale after similar objections had been made, is res judicata of this suit. The same questions were involved and were necessarily determined by the court when, notwithstanding the objections made, it approved the claims and confirmed the sale. Counsel for plaintiff contends that, the sale

not having been confirmed, there was no presumption that the court would confirm it; consequently the cause of action did not arise until after the confirmation of the sale, and could not have been determined before the confirmation. The rule upon which he relies is stated in 23 Cyc. 1314, as follows:

"A judgment is not and cannot be an estoppel as to facts which did not occur until after the judgment was rendered, and which were not involved in the suit in which it was rendered."

It seems that counsel has confused the acts of the defendants with the act of the court. The acts of the defendants charged by the plaintiff as affording ground for relief occurred prior to the confirmation, and the confirmation was a determination by the court that these acts were not sufficient to prevent a confirmation of the sale which the plaintiff is here seeking to set aside. The only distinction between that action and this is that there the plaintiff was attempting to prevent that court from doing that which he asks this court to undo. The same elements entered into the court's determination there as are involved here, the prior acts and conduct of the defendants, and no additional element was introduced by the act of the court in the confirmation. The relief here sought is in effect the setting aside of the judgment of the state court in confirming the sale. The fraud upon which the hope of such relief is based was involved in the issues raised in the state court, and was necessarily determined by its judgment. Intermela v. Perkins, 213 Fed. 106, filed in this court, April 20, 1914; United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Vance v. Burbank, 101 U. S. 514, 25 L. Ed. 929; Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Stockton v. Ford, 18 How. 418, 15 L. Ed. 395; Mitchell v. First Nat. Bank of Chicago, 180 U. S. 471, 480, 21 Sup. Ct. 418, 45, L. Ed. 627; 2 Black on Judgments, 504; Willoughby v. Chicago, etc., 50 N. J. Eq. 656, 25 Atl. 277; Hearst v. Putman, 28 Utah, 184, 77 Pac. 753, 66 L. R. A. 784, 107 Am. St. Rep. 698.

[5] If the contention of the plaintiff should prevail in this instance, in all cases where a judgment is sought to be set aside on the ground that it was obtained by fraud, a plaintiff might contend that the fraud of the plaintiff was not committed until the judgment was entered, and yet the Supreme Court of the United States has laid down very clearly the rule that relief cannot be had unless the fraud is extrinsic or collateral, and that if it was involved in the issues it was determined by the judgment. United States v. Throckmorton, supra.

It is needless to discuss the further contentions of the parties. From what has been said the conclusion is inevitable that the complainant's bill must be dismissed.

Decree accordingly.