### UNITED STATES v. SOUTHERN PAC. CO. et al.

(District Court, S. D. California, N. D. February 14, 1916.)

#### No. 221.

1. WITNESSES ⊚═13—COMPELLING ATTENDANCE—WHERE SUBPŒNA MAY BE SERVED.

A subpœna served without the district and at a place more than 100 miles from the place of holding court has no potency, and a witness attending pursuant to such a subpœna is regarded as attending voluntarily.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 14; Dec. Dig. ⊚═13.]

2. Costs ☞184—Witness Fees—Witnesses Attending Voluntarily.

Under the statute allowing witnesses for each day's attendance in court or before any officer pursuant to law, $1.50 and 5 cents a mile for going from his place of residence to the place of trial or hearing, and 5 cents a mile for returning, the fees of witnesses who attend voluntarily at the request of the prevailing party may be taxed as costs, as "pursuant to law" does not limit the fees to witnesses attending pursuant to subpœna, but has relation to the word "officer," and restricts the application of the statute to witnesses attending before some officer conducting a hearing in pursuance of law.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 715–736; Dec. Dig. ☞184; Witnesses, Cent. Dig. § 55.]

3. Courts ☞89—Rules of Decision—Precedents.

While a precedent long established should not be overthrown for light or trivial reasons, when a judge is convinced that an opinion has been generally discredited and is not founded upon good reasoning, it is his plain duty to disregard it.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 311, 312; Dec. Dig. ☞89.]

4. Statutes ☞225¾, 230—Construction—Re-enactment or Amendment Subsequent to Construction.

When a law that has been construed by the courts is re-enacted, the re-enactment adopts the construction placed upon the law by the court; and when a legislative body amends a law that has been construed by the courts, and changes its language, it intends to change the rule of decision upon the subject.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 306, 311; Dec. Dig. ☞225¾, 230.]

5. Statutes ☞190—Construction—Ambiguity.

The intentions of Congress and the object aimed at is the fundamental inquiry in judicial construction and language capable of more than one meaning is to be taken in that sense which will harmonize with such intention and object and effect the purposes of the enactment, and such construction of apparently conflicting provisions will be adopted as will best promote the harmonious operation of the law as a whole.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 269; Dec. Dig. ☞190.]

6. Statutes ☞200—Construction—Ascertaining Intent.

In construing a statute to harmonize with the intention of Congress and the object aimed at, words may be rejected and others substituted.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 278; Dec. Dig. ☞200.]

7. Costs ☞185—Witness Fees—Mileage.

It is well settled that mileage for witnesses who attend from a distance beyond the reach of a subpœna can only be allowed to the extent of 100 miles.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 739–743; Dec. Dig. ☞185.]

At Law. Action by the United States against the Southern Pacific Company and others. On appeal from the taxation of costs by the clerk. Costs retaxed.

E. J. Justice, Sp. Asst. Atty. Gen., and Albert Schoonover, U. S. Atty., of Los Angeles, Cal.

Charles R. Lewers, of San Francisco, Cal., and J. H. Call, of Los Angeles, Cal., for defendants.

TRIPPET, District Judge. The question presented to the court, on appeal from the taxation of costs by the clerk, is whether or not costs may be taxed against the losing party for mileage of witnesses subpœnaed in the Northern district of California to appear before the court at Los Angeles. Mileage for these witnesses was taxed by the clerk from the north line of the Southern district to Los Angeles, where the court was held, a distance of 275 miles. The contention of the defendant is that no mileage should be allowed for these witnesses, or, if allowed, the mileage should be allowed for a distance not exceeding 100 miles from the place where the court was held.

[1] In 1871 Judge Sawyer, in the Circuit Court for the District of California (Spaulding v. Tucker, 2 Sawy. 50, Fed. Cas. No. 13,221), held that a subpœna served without the district and at a place more than 100 miles distant from the place of holding court had no potency, and that a witness who attended from beyond the district, and more than 100 miles distant from the place of holding the court, attended voluntarily. This decision is well supported by authority existing at that time and by many decisions rendered since, and it will be followed in this case.

[2, 3] In the same case Judge Sawyer held that the losing party cannot be taxed with the traveling expenses of witnesses residing either within or beyond reach of a subpœna, who voluntarily attend a trial at the request of the prevailing party. This has been the rule of decision in this district, so far as the court is advised, until the present time, and the court now is asked to adopt another rule of decision. Prudence, indeed, will dictate that a precedent long established should not be overthrown for light or trivial reasons; but when a judge is convinced that an opinion has been generally discredited as a precedent, and that it is not founded upon good reasoning, it is his plain duty to disregard it. The case will first be considered as a precedent. The same question came before Judge Sawyer in the case of Haines v. McLaughlin (C. C.) 29 Fed. 71. In this case Judge Sawyer said:

"In a recent case, however, that distinguished jurist, Mr. Justice Gray, of the Supreme Court, with the concurrence of Mr. Circuit Judge Colt, in the First Circuit, overruled these decisions in U. S. v. Sanborn (C. C.) 28 Fed. 299, and on the authority of this case we are asked to reconsider the rule, as long established in this circuit. Did that case stand alone, I should not hesitate to yield my own impressions, whatever they might be, to authority so eminent. But we have seen that it does not stand alone, and that in three, at least, of the other circuits, the ruling has been different, having the sanction of three eminent justices of the Supreme Court. In U. S. v. Sanborn the court seems to attach some importance to the fact that the rule adopted had long prevailed in that circuit, whatever the case might have been in other circuits. But the case is governed by the same statute, which is applicable to all the circuits. Whichever rule is the proper one should, therefore, be followed in all the circuits, and it is highly important that the point should be authoritatively settled by a decision of the Supreme Court. With the utmost respect for those taking the other view, I shall, for the present, adhere to the rule heretofore established in this circuit; and my associate, for the purposes of this case, will adopt the view of Mr. Justice Gray. If desired, a certificate of opposition of opinion will be made, and it is to be hoped that the case will be taken up for an authoritative decision."

It will thus be seen that Judge Sawyer had grave doubts as to the propriety of his decision in Spaulding v. Tucker, and stated that, for the present, he would adhere to that ruling. The question came before Judge Ross in the case of Lillienthal v. Southern California Railway Company (C. C.) 61 Fed. 622, in 1894. Judge Ross followed the decisions of Judge Sawyer. In his opinion, however, he used the following language:

"Without regard to my individual views, I think I ought to adhere to the construction put upon the statute so long ago by the Circuit Judge for this circuit, and which, so far as I am advised, has prevailed here ever since."

This sentence of Judge Ross indicates most clearly that he did not approve of the reasoning of Judge Sawyer in the cases aforesaid, and it is thought that this expression justifies the court in considering the question an open one. In 1899 the question came before Judge Hawley in this circuit in Hanchett v. Humphrey, 93 Fed. 895. He allowed witness fees under the circumstances presented in this case. The question came before Judge Bean in 1909, in the case of United States v. Southern Pacific Company (C. C.) 172 Fed. 909. He allowed the mileage fees for witnesses under the circumstances presented in this case. It will thus be seen that, in this circuit, the opinion of Judge Sawyer stands discredited as a precedent.

It would appear from the reported decisions that practically all, if not all, the districts in the country, outside of California, allow fees to witnesses who attended voluntarily. The only Circuit Court of Appeals that has dealt with the question, to which the attention of the court has been called, is the case of Marks v. Merrill Paper Co. et al., 203 Fed. 16, 123 C. C. A. 380. In this case fees were allowed witnesses who attended from a distance beyond the reach of a subpœna. Thus it will be seen that the opinion in Spaulding v. Tucker has been generally disregarded as a precedent. As to the reasoning contained in Spaulding v. Tucker, it is plainly faulty. The statute under consideration, in so far as it is material to the discussion, is as follows:

"For each day's attendance in court, or before any officer pursuant to law, $1.50 and 5 cents per mile for going from his place of residence to said place of trial or hearing, and 5 cents per mile for returning."

The gist of the reasoning of Judge Sawyer is contained in the following:

"I think, under the existing statute, to attend 'pursuant to law' is to attend under the obligatory requirements of the law. The party may request, but the law knows no request. It commands or is silent; and a party who attends 'pursuant to law' attends pursuant, or in obedience to, the commands of the law." Fed. Cas. 13,221, p. 900.

That this is faulty reasoning can be easily demonstrated. The statute in force prior to the enactment of the present law is in the Act of Congress approved February 28, 1799, and is as follows:

"Sec. 6. And be it further enacted, that the compensation to jurors and witnesses, in the courts of the United States, shall be as follows, to wit: To each grand and other juror, for each day he shall attend in court, one dollar and twenty-five cents; and for travelling, at the rate of five cents per mile,

from their respective places of abode, to the place where the court is holden, and the like allowance for returning. To the witnesses summoned in any court of the United States, the same allowance as is above provided for jurors." 1 U. S. Stat. at L. 626.

This statute, in so far as the question at issue is concerned, is a re-enactment of the statute of May 8, 1792. 1 U. S. Stat. 277. Under the statute of 1799 the courts held that the losing party could not be taxed with the fee of a witness unless he be regularly summoned by the marshal or his deputy. Dreskill v. Parish, 5 McLean, 241, Fed. Cas. No. 4,076. This case was very properly decided, because the statute said, in so many words, that fees were allowed to witnesses summoned. It had also been held by Judge Story in Prouty v. Draper, Fed. Cas. No. 11,447 (1842), that a witness could be allowed his fees to his residence, although without the state and more than 100 miles from the place of the trial. No reference in this case is made to the statute of 1799 above quoted. The facts do not appear, but in all probability the witness had been summoned to appear, and the question as to whether the summons was effectual was not raised. With this state of the law before Congress, it enacted the legislation now in force. In order that we may understand just what Congress did, the act of 1799 and the act of 1853, in so far as it is necessary to consider them, will now be stated again. It is provided by the act of 1799 that fees shall be allowed:

"To the   witnesses *summoned* in any court in the United States."

In the act of 1853 it is provided:

"For each day's *attendance* in court, or before any officer pursuant to law, one dollar and fifty cents, and five cents per mile for going from his place of residence to said place of trial or hearing, and five cents per mile for returning."

In amending the law as it did Congress meant to do two things, to wit: To change the rule concerning the allowance of witness fees, and to provide for witness fees before an officer.

[4] The first thing that concerns us in this matter is what Congress meant by striking out the word "summoned" in the law and inserting in lieu thereof the word "attendance." When a law that has been construed by the courts is re-enacted, the re-enactment adopts the construction that the court has placed upon the law. It also is true that when a legislative body amends a law that has been construed by the courts, and changes the language thereof, it intends to change the rule of decision upon the subject. If Congress had intended by this amendment to require that a witness should be summoned in order that fees might be taxed, then the best word in the English language for Congress to have used was the word "summoned," the word that was already in the law. If Congress intended to provide by the amendment that a witness should have fees who had merely attended the trial, regardless of his being summoned, the best word in the English language for Congress to use was the word "attendance." When Congress changed the law, and struck out the word "summoned," and inserted in lieu thereof the word "attendance," it certainly meant to

change the law, especially in view of the interpretation that had been given to the statute prior to the enactment of 1853. If Congress meant by the use of the phrase "in pursuance of law" to declare that witness fees should not be taxed unless a witness was summoned, then Congress used very inappropriate language to express its meaning, and especially is this true in view of the previous legislation and holding of the courts.

For Congress to change the wording of the statute without intending to change its effect would be worse than useless. In this instance it would be an absurd act. The courts must assume that Congress acted intelligently, and intended something other than absurdity by what was done. The first case to which my attention has been called construing the act of 1853 is in accordance with this reasoning, namely, the case of Anderson v. Moe, Fed. Cas. No. 359.

[5, 6] The phrase "in pursuance of law" has nothing to do with the question as to whether or not fees of witnesses who attend voluntarily can be taxed as costs. Some use, however, if possible, should be found for the phrase "in pursuance of law." One class of cases says that "in pursuance of law" modifies the word "attendance," and the effect of it is to require witnesses to be summoned before the fees can be taxed, and the fees for voluntary witnesses cannot be taxed as costs. The holding is that "in pursuance of law" means subpœnaed. Judge Sawyer said this was the only purpose of the phrase. Another class of cases holds that "in pursuance of law" modifies the word "attendance," but decides that a witness who attends voluntarily attends "in pursuance of law," as well as a witness who is summoned. This latter construction gives no effect whatever to the phrase "in pursuance of law," because the sentence would have just exactly that effect if the phrase were left out of it. There are only two circumstances that can be considered in connection with the manner in which witnesses attend. One is where they are summoned, and the other where they come voluntarily. Hence it necessarily follows that, if in both cases the fees can be taxed, the phrase "in pursuance of law" serves no useful purpose. The sentence is ambiguous; else why should the courts have bestowed so much labor upon it, and why this diversity of opinion? When a sentence is ambiguous, it should be construed to avoid absurdity, and to carry out the intention of the legislative act. The intention of Congress and the object aimed at is the fundamental inquiry in judicial construction, and language capable of more than one meaning is to be taken in that sense which will harmonize with such intention and object, and effect the purposes of the enactment. To do this words may be rejected, and others substituted, and such construction of apparently conflicting provisions will be adopted as will best promote the harmonious operation of the law as a whole.

This phrase has a useful purpose in the statute. Prior to the amendment of 1853, the law limited the right of taxation of costs to witnesses summoned *in any court,* and by the amendment the phrase "or before any officer pursuant to law" was added. This is the second purpose that Congress had in amending this law, namely, the provision for the allowance of fees to a witness who attended before

an officer. Congress did not mean by this to allow fees to a witness who attended before just any officer. It did not intend to allow fees to witnesses who attended before a clerk, or commissioner, or other officer, to witness the execution of a deed or pension paper, or land office paper, or many other purposes for which witnesses appear before officers. Congress meant an officer who was conducting a hearing in pursuance of the law, in the administration of justice, such as a master, referee, or commissioner, or other officer taking evidence. The phrase "in pursuance of law" does not modify the word "attendance," but it has relation to the word "officer." It does not modify the word "officer" in a grammatical sense, but is used in connection with it. Attention is called now to the phrase "for going from his place of residence to the place of trial or hearing," as it appears in the act of 1853. In the act of 1799 it will be seen that the word "court" was used, instead of the phrase "the place of trial or hearing" in the act of 1853. Congress evidently intended something by this change. It is believed that the word "court" would have answered all the purposes of the act, if it were only intended to allow fees to witnesses who attended "in court." But Congress intended to allow fees to witnesses who attended before an officer. There is no trial, in the ordinary sense of that word, that occurs before an officer; therefore the word "hearing" was used. It is submitted that the word "trial" would answer all the purposes of providing fees for witnesses who attended "in court," and the word "hearing" (15 A. & E. Ency., 308) is particularly appropriate to apply to witnesses who attend before an officer. The sentence, in order to carry out the evident intention of Congress, should be rendered thus: "For each day's attendance in court or before an officer in a hearing held pursuant to law." The phrase "pursuant to law" modifies, in this rendition of the sentence, the word "held," and does not modify the word "attendance." No other construction can be given to the sentence, and avoid absurdity, and give effect to the changed language in the statute, and especially the phrase "pursuant to law." Mr. Justice Gray, in U. S. v. Sanborn (C. C.) 28 Fed. 299, 302, said:

"The same view applies with increased force to the language of Act Feb. 26, 1853, c. 80, § 3 (10 Stat. 167), repeated in section 848 of the Revised Statutes, by which witness fees are declared to be, 'For each day's attendance in court, or before any officer pursuant to law,' $1.50, and five cents a mile for going 'from his place of residence to the place of trial or hearing,' and five cents a mile for returning; and neither the word 'summoned,' nor any equivalent word, is used, except in a clause added to prevent the multiplication of fees 'when a witness is subpœnaed in more than one cause between the same parties at the same court.' In the phrase 'for each day's attendance in court, or before any officer pursuant to law,' the words 'pursuant to law' would seem to have been inserted, not to restrict or qualify the effect of 'attendance in court,' but rather to limit the attendance 'before any officer' to attendance before such magistrates, commissioners, and other officers as are authorized by law to take testimony."

With Justice Gray sat Judge Colt, who concurred. This is undoubtedly the highest authority on the subject. It is seen that Justice Gray adopted the view above set forth by this court, but he reasons it out in a different way.

In Hanchett v. Humphrey (C. C.) 93 Fed. 895, Judge Hawley uses language in justification of his determination not to follow the opinion in Spaulding v. Tucker, which appeals to me as sound reasoning. His reasoning justifies me in taking the course I am taking here. His reasoning also shows what probably prompted Congress to change the law. The language to which I refer is as follows:

"It is, of course, true that the statutory means of compelling the attendance of witnesses is by subpœna. But what right has the defeated party to complain because the other party caused his witnesses to come without a subpœna, and thereby saved expense? If a subpœna was served, the winning party could recover, not only the mileage of the witnesses, but the costs and expenses incurred in subpœnaing them; and these costs might, in many cases, be much greater than the mileage of the witnesses allowed by the United States statute. The objection to allowance of mileage because no subpœna is served, ground down to the common sense of the question, is that the winning party ought not to collect any disbursements he necessarily incurred by paying the legal fees of the witnesses because he did not go to the further expense of having them subpœnaed. Such reason does not appear to me to be sound. Its tone is not judicial, and its logic is certainly faulty, and the result, if continued, would lead to unnecessary expense to litigants, and ought not to be adhered to any longer. It is time to call a halt. If a mistake has been made, why not correct it, without waiting for an authoritative decision from the Circuit Court of Appeals or from the Supreme Court? The question may never reach either of said courts. Is it not, therefore, better to follow a well-recognized and sound principle of law than to blindly adhere to a precedent simply because it was made in your own circuit?"

[7] Having concluded that the fees for witnesses who attend voluntarily can be taxed as costs, the only question remaining is the mileage. The law is so well settled on reason and authority that mileage for witnesses who attend from a distance beyond the reach of a subpœna can only be allowed to the extent of 100 miles that it is deemed unnecessary to review the decisions upon the subject. The costs, as to mileage, in this case are to be retaxed, and the witnesses allowed mileage for 100 miles only.

I am authorized to say that Judge BLEDSOE concurs in this opinion